[No. B184199. Second Dist., Div. Seven. July 19, 2006.]

In re BABY BOY M., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Respondent, v.
TIFFANY M., Defendant and Appellant.

**COUNSEL**

Jesse F. Rodriguez, under appointment by the Court of Appeal, for Defendant and Appellant.

Raymond G. Fortner, Jr., County Counsel, Larry Cory, Assistant County Counsel, and Pamela S. Landeros, Deputy County Counsel, for Plaintiff and Respondent.

Aida Aslanian, under appointment by the Court of Appeal, for Minor.

**OPINION**

**PERLUSS, P. J.**—Tiffany M., the mother of Baby Boy M., appeals from juvenile court orders declaring Baby Boy M., whose whereabouts are unknown, a dependent child of the court; denying Tiffany family reunification services; identifying long-term foster care as Baby Boy M.'s permanent plan; and ordering permanent placement services for the child if he is ever found. Tiffany contends the juvenile court lacks jurisdiction to make custody determinations regarding her missing son and, in any event, the court should not have conducted the jurisdiction and disposition hearing until Baby Boy M. and his biological father are located. We agree and reverse all orders entered after the April 8, 2005 detention hearing. The matter is remanded with directions to the juvenile court to maintain in full force and effect the protective custody warrant issued for Baby Boy M., to set the matter for periodic review hearings as required by law and to take such further acts as are necessary to secure the return of the child.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Initial Dependency Petitions on Behalf of Tiffany's First Three Children*

On approximately September 14, 2001, Tiffany's three-month-old daughter E.H. was admitted to the hospital with multiple fractures—from one to six weeks old—that were consistent with physical abuse and would not ordinarily occur except as a result of neglectful acts or omissions by E.H.'s parents. (E.H. was in the care of both her father Jeremy H., Sr., and Tiffany at the time of the injuries.) The Los Angeles County Department of Children and Family Services (Department) filed a petition on September 20, 2001, to declare E.H. and her 20-month-old sibling D.H. dependent children of the court under Welfare and Institutions Code section 300, subdivisions (a), (b), (e), (i) and (j),[1] alleging serious physical harm, failure to protect, severe physical abuse of a child under five, cruelty and abuse of a sibling.[2] E.H., who was born with a neurological condition, was initially put on "hospital hold" and then placed in a foster home licensed to care for medically fragile children; D.H. was detained and placed with paternal grandmother Karen H. (See *In re E. H., supra*, 108 Cal.App.4th at pp. 661–662.) At a jurisdiction and disposition hearing on March 25, 2002, the juvenile court sustained the petition and ordered E.H. and D.H. suitably placed. (See *id.* at p. 667.)

In September 2002 Tiffany's son J.H. was born with cerebral palsy and a neurological condition similar to E.H.'s. J.H. was detained 11 days after his birth based on the Department's assessment he would be at risk if released to Tiffany. On December 5, 2002, the juvenile court ordered J.H. suitably placed.

At a permanency planning hearing on July 29, 2004, the juvenile court granted legal guardianship of D.H., E.H. and J.H. to Karen H. Tiffany was permitted visitation at the legal guardian's discretion. Unmonitored visitation was allowed in Karen H.'s home; visitation was to be monitored outside her home. However, the case social worker advised Karen H., that in her

---

[1] Statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] Our description of the factual and procedural background incorporates, to a limited extent, information set forth in our opinion reversing the juvenile court's order dismissing the allegation that E.H. was an individual coming within the provisions of section 300, subdivision (e) (child under five who has suffered severe physical abuse by parent). The juvenile court had sustained the petition as to section 300, subdivisions (a), (b) and (j). (*In re E. H.* (2003) 108 Cal.App.4th 659 [133 Cal.Rptr.2d 740]; see Evid. Code, §§ 452, 459.)

professional opinion, she should never allow Tiffany to have unmonitored contact with the children.

### 2. *The Death of J.H., the Removal of D.H. and E.H. from Karen H.'s Custody and the Discovery of Tiffany's Fourth Child W.M.*

On Monday morning, August 30, 2004, Karen H. and Tiffany brought J.H. to the hospital because he had droopy eyes and a faint pulse and blood and fluids he had been drinking were coming out of his nose. J.H. died at the hospital later that day and was found to have severe bleeding in the brain, possibly due to blunt force trauma; hemorrhaging; bruising of the eyes; and cardiovascular and respiratory failure.[3]

D.H. and E.H. were immediately removed from Karen H.'s custody and placed in shelter care; Karen H. was arrested and charged with J.H.'s murder. In connection with the investigation of J.H.'s death, the Department learned Tiffany had given birth to a fourth child, W.M., in January 2004. W.M. was removed from Tiffany's care and custody on August 30, 2004. On September 2, 2004, the Department filed supplemental petitions on behalf of D.H. and E.H. and a section 300 petition as to W.M..

### 3. *The Birth of Baby Boy M. and the Section 300 Petition on His Behalf*

In early March 2005 Tiffany gave birth to Baby Boy M. at a hospital in Lancaster. Tiffany was released from the hospital two days later. According to her testimony, Tiffany left the hospital and met Baby Boy M.'s biological father, identified by Tiffany as "James Smith," at the Lancaster train station where she gave the child to him.

On March 15, 2005, during Tiffany's monitored visitation with D.H., E.H. and W.M., a social worker noticed Tiffany no longer appeared to be pregnant and asked if she had given birth. Tiffany refused to answer. Believing the baby was at risk of harm, the social worker, accompanied by police officers, visited Tiffany's home on March 31, 2005, but Tiffany's sister denied them entry. The following day a social worker confirmed with the Department of Health Services' newborn screening program that Tiffany had given birth.

---

[3] Although there are several conflicting stories as to what occurred, Karen H. initially claimed J.H. had fallen out of bed. Based on subsequent interviews with Karen H., Tiffany and Jeremy H., Sr., it appears J.H., D.H. and E.H. had spent the weekend before J.H. was admitted to the hospital with Tiffany.

On April 4, 2005, the Department filed a section 300 petition on behalf of Baby Boy M., alleging he was at risk of harm based on the severe injuries suffered by E.H. and the death of J.H. At the initial detention hearing, which Tiffany did not attend, the juvenile court ordered Baby Boy M. detained and issued a protective custody warrant for him. The court then continued the detention hearing and ordered the Department to submit proof of a live birth.

At Tiffany's monitored visitation on April 5, 2005, the social worker gave her a copy of the section 300 petition filed April 4, 2005, the detention report dated April 4, 2005, and a citation to appear at the continued detention hearing scheduled for April 8, 2005. Tiffany denied giving birth and told the social worker she would not appear. Tiffany was informed the Department had evidence of Baby Boy M.'s birth and warned an arrest warrant might be issued if she failed to appear.

Tiffany failed to appear at the continued detention hearing on April 8, 2005. After the Department provided the juvenile court with hospital records relating to Baby Boy M.'s birth, the court issued a bench warrant for Tiffany and a search warrant for Tiffany's home and ordered the protective custody warrant for Baby Boy M. issued on April 4, 2005, to remain in full force and effect. The matter was continued for a pretrial resolution conference.

4. *The Contempt Proceedings to Ascertain the Whereabouts of Baby Boy M.*

Tiffany was apprehended and brought before the juvenile court on April 14, 2005. Beginning on April 18, 2005, and continuing through April 27, 2005, a series of contempt proceedings (before Hon. S. Patricia Spear) were held to ascertain the location of Baby Boy M. Tiffany remained in custody throughout this period.

On April 18, 2005, Tiffany testified she had checked into a hospital in Lancaster on an evening in early March 2005, gave birth to Baby Boy M. and was released from the hospital two days later. Her sister Kalisha, who lived in Lancaster, took her from the hospital to the train station so she could give Baby Boy M. to Smith, who had said he was going to take the baby to Atlanta, where Smith lived. Tiffany claimed she did not know, nor did she want to know, Smith's telephone number, address or anything about him other than he lived in Atlanta. Tiffany explained she had met Smith on the streets near her home in Long Beach and began a sexual relationship with

him about three months before she got pregnant; the relationship ended as soon as she got pregnant. Smith, however, called Tiffany approximately once a week to see how she was doing. A few months before Baby Boy M. was born, she and Smith agreed he would take the baby because Tiffany "did not want my son in foster care."

The court initially disbelieved Tiffany's testimony she did not know how to contact Smith or where Baby Boy M. was located. However, after several additional hearings with testimony from Tiffany's sister and mother, as well as further testimony by Tiffany, on April 27, 2005, the court concluded it was not convinced beyond a reasonable doubt Tiffany had more information than she had already divulged. The court indicated it was "beginning to think she really did set it up . . . so that she could say she doesn't know where they are . . . ." Consequently, the court purged the contempt proceedings and released Tiffany from custody.

### 5. *The Jurisdiction and Disposition Hearings*

On June 21, 2005, the juvenile court (Hon. Stanley Genser) held a jurisdiction hearing for D.H., E.H., W.M. and Baby Boy M. Tiffany moved to dismiss Baby Boy M.'s petition because he was not in her custody and there was no evidence Baby Boy M. was at risk. The court denied the motion, finding that Tiffany had concealed her pregnancy, gone to Lancaster from her home in Long Beach to give birth to Baby Boy M. and had constructive custody of the baby when he was released to her by the hospital. Tiffany submitted all remaining issues to the court based on the Department's reports. After determining Tiffany understood and voluntarily waived her trial rights, the court sustained the petitions as amended as to all four children.[4]

Proceeding immediately to disposition, the juvenile court declared W.M. and Baby Boy M. dependent children of the court on the ground they were individuals described in section 300, subdivisions (a), (f), and (j) and denied Tiffany family reunification services as to all four children pursuant to section 361.5, subdivision (b)(4) and (10), finding that she had caused the death of another child through abuse or neglect and that she had already failed to reunify with D.H. and E.H. and had not addressed the issues that led to their removal. The court set a permanency planning hearing (§ 366.26) for October 18, 2005, for D.H., E.H. and W.M.. No permanency planning hearing was

---

[4] Based on the supplemental petitions filed on behalf of E.H. and D.H., the juvenile court terminated Karen H.'s legal guardianship of her grandchildren. The court also terminated its jurisdiction over J.H.

scheduled for Baby Boy M. The court identified long-term foster care as Baby Boy M.'s permanent plan[5] and ordered he would receive permanent placement services if he were located. The court again ordered the previously issued protective custody warrant as to Baby Boy M. to remain in full force and effect.

## CONTENTIONS

Tiffany contends the juvenile court lacked subject matter jurisdiction for dependency proceedings as to Baby Boy M. under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) (Fam. Code, § 3400 et seq.) and, even if it had jurisdiction, the court should have deferred conducting the jurisdiction and disposition hearings until Baby Boy M. is located. The Department and appellate counsel for Baby Boy M. contend Tiffany's appeal should be dismissed under the disentitlement doctrine because of her deliberate acts to obstruct the Department's efforts to bring Baby Boy M. under the jurisdiction of the juvenile court.

## DISCUSSION

### 1. *The Disentitlement Doctrine Does Not Apply Under the Circumstances Presented Here*

█ Under the disentitlement doctrine a reviewing court applying equitable principles may exercise its inherent power to dismiss an appeal by a party who has refused to comply with trial court orders. (*In re Claudia S.* (2005) 131 Cal.App.4th 236, 244 [31 Cal.Rptr.3d 697].) "The disentitlement doctrine is based on the equitable notion that a party to an action cannot seek the assistance of a court while the party 'stands in an attitude of contempt to legal orders and processes of the courts of this state. [Citations.]' [Citation.] A formal judgment of contempt, however, is not a prerequisite to exercising our power to dismiss; rather, we may dismiss an appeal where there has been willful disobedience or obstructive tactics." (*Ibid.*)

The Department and appellate counsel for Baby Boy M. argue Tiffany's appeal should be dismissed under the disentitlement doctrine, which has been

---

[5] The minute orders entered following the June 21, 2005 hearings include the order for permanent placement services for Baby Boy M. but not the order for a plan of long-term foster care. However, the minute order from the November 21, 2005 review hearing (§ 366.3, subd. (d)) states, "The minor was ordered into long term foster care at the disposition date." We take judicial notice of the juvenile court's November 21, 2005 minute order. (Evid. Code, §§ 452, subd. (d), 459.)

applied in dependency proceedings. (See *In re Kamelia S.* (2000) 82 Cal.App.4th 1224, 1227–1229 [98 Cal.Rptr.2d 816] [father who absconded with child in violation of court orders not permitted to appeal from order placing child in foster care]; *In re C.C.* (2003) 111 Cal.App.4th 76, 85–86 [3 Cal.Rptr.3d 354] [mother who refused to undergo psychological evaluation and otherwise interfered with assessment of her ability to care for the child not permitted to appeal order denying reunification services].) Although acknowledging that Tiffany was not held in contempt after several evidentiary hearings and, in fact, has not violated any juvenile court orders relating to Baby Boy M., the Department and Baby Boy M. assert application of the disentitlement doctrine is justified under the circumstances of this case: Tiffany, while under the jurisdiction of the juvenile court because of the dependency proceedings involving her other children, willfully impeded the ability of the court and the Department to protect Baby Boy M. by delivering the child to his biological father to take to an unknown location, recognizing that, if she kept the baby, the Department would immediately take custody of him. As a result, they argue, it would be appropriate to dismiss Tiffany's appeal, even though such an action would represent an expansion of the disentitlement doctrine.

We certainly do not condone Tiffany's efforts to mislead the Department about Baby Boy M.'s birth and share the Department's and juvenile court's concern that, in giving her child to a man she barely knew (albeit Baby Boy M.'s biological father) to live in conditions and circumstances about which she did not inquire, Tiffany has failed to arrange adequately for the care of her child. (Cf. § 300, subd. (g); *In re Monica C.* (1995) 31 Cal.App.4th 296, 305 [36 Cal.Rptr.2d 910].) Nonetheless, all of Tiffany's "obstructive conduct" occurred prior to the filing of the dependency petition on April 4, 2005.[6] Tiffany had no legal obligation to discuss her pregnancy or the birth of Baby Boy M. with the Department. Although she may have impeded the Department's efforts to help her family and frustrated the underlying purpose of the dependency law, she does not " 'stand[] in an attitude of contempt to legal orders and processes of the courts of this state.' " (*In re Claudia S.*, *supra*, 131 Cal.App.4th at p. 244.) Under the circumstances we decline to expand the disentitlement doctrine to preclude the appeal of a recalcitrant parent, who, despite her initial lack of cooperation, has violated no court

---

[6] Baby Boy M. contends Tiffany's obstructive tactics continued after the initial detention hearing at which the court ordered Baby Boy M. detained and issued a protective custody warrant when Tiffany again denied to the social worker she had given birth and ignored the citation to appear, finally participating in the dependency proceedings only after she was arrested. Unfortunately this level of noncooperation by a parent is not unusual in dependency cases and is not, in any event, sufficiently egregious to deprive Tiffany of her right to challenge the juvenile court's jurisdiction and disposition orders.

order and who presents a threshold question concerning the subject matter jurisdiction of the juvenile court.

2. *The Record Fails to Clearly Demonstrate Jurisdiction to Make Nonemergency Custody Orders Under the UCCJEA*

█ The UCCJEA "provides the exclusive method of determining subject matter jurisdiction in custody cases in California." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 310 [27 Cal.Rptr.2d 595, 867 P.2d 706];[7] see Fam. Code, § 3421, subd. (b) ["Subdivision (a) [of § 3421] is the exclusive jurisdictional basis for making a child custody determination by a court of this state."].) The UCCJEA applies to dependency proceedings. (*In re Claudia S., supra,* 131 Cal.App.4th at p. 245; see *In re Stephanie M.,* at p. 310.)

█ Family Code section 3424 provides for temporary emergency jurisdiction over a child present in this state who has been abandoned or if it is necessary in an emergency to protect the child from mistreatment or abuse or threatened mistreatment or abuse. (See *In re Nada R., supra,* 89 Cal.App.4th 1166.) Although she testified she gave Baby Boy M. to his biological father to take out of state (specifically to Georgia) shortly after the child's birth, which if true would mean the child was not in California when the dependency petition was filed, Tiffany does not contest the juvenile court's jurisdiction to enter the initial detention orders made in April 2005. However, she does argue the court lacked jurisdiction under Family Code section 3421, subdivision (a)[8] to make additional orders regarding the custody of Baby

---

[7] The Supreme Court in *In re Stephanie M., supra,* 7 Cal.4th at page 310, was referring to the Uniform Child Custody Jurisdiction Act (UCCJA). The UCCJEA replaced the UCCJA effective January 2000. (See *In re Nada R.* (2001) 89 Cal.App.4th 1166, 1173 [108 Cal.Rptr.2d 493].)

[8] Family Code section 3421, subdivision (a), states, "Except as otherwise provided in Section 3424, a court of this state has jurisdiction to make an initial child custody determination only if any of the following are true: [¶] (1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state. [¶] (2) A court of another state does not have jurisdiction under paragraph (1), or a court of the home state of the child has declined to exercise jurisdiction on the grounds that this state is the more appropriate forum under Section 3427 or 3428, and both of the following are true: [¶] (A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence. [¶] (B) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships. [¶] (3) All courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 3427 or 3428. [¶] (4) No court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2), or (3)."

Boy M., including the jurisdiction and disposition orders challenged by her appeal.[9]

Specifically, Tiffany asserts there is insufficient evidence in the record that California was Baby Boy M.'s home state at the time the proceeding commenced (Fam. Code, § 3421, subd. (a)(1)) because, although the child was born in California, Tiffany gave him to Smith, who told her he was going to raise the child in Atlanta. Although there is no evidence corroborating Tiffany's testimony and also no evidence that, even if she gave Baby Boy M. to Smith, Smith in fact took the child out of state, there is similarly no evidence establishing Baby Boy M. lived in California from the day he was born until the initial detention hearing on April 4, 2005, required for California to be the child's home state. (Fam. Code, § 3402, subd. (g) ["In the case of a child less than six months of age, the term ['home state'] means the state in which the child lived from birth with [a parent or a person acting as a parent]."].) Tiffany also contends there are insufficient facts in the record to establish any of the other grounds identified in Family Code section 3421 for California to exert jurisdiction over the absent Baby Boy M.

■ Implicit in Tiffany's argument is the assertion the Department, which initiated the dependency proceedings, bears the burden of establishing the court's jurisdiction. We agree (see *In re Marriage of Hopson* (1980) 110 Cal.App.3d 884, 894 [168 Cal.Rptr. 345] [subject matter jurisdiction under UCCJA requires findings that statutory criteria have been met]; *In re C. T.* (2002) 100 Cal.App.4th 101, 107 [121 Cal.Rptr.2d 897] [unsubstantiated allegations insufficient to invoke emergency jurisdiction under UCCJEA]) and further agree the record does not contain sufficient facts to establish whether California has subject matter jurisdiction. First, as discussed, Tiffany testified she gave Baby Boy M. to Smith for him to take the child out of state. If Smith did so, California could not be Baby Boy M.'s home state because the child's absence from the state would not be "temporary" (see Fam. Code, § 3402, subd. (g) ["[a] period of temporary absence of any of the mentioned persons is part of the period [for determining the child's home state]"]) and he would not have lived in California from birth until the date of the detention hearing. The absence of evidence establishing whether Smith in fact took the child to Atlanta, even if one disbelieves Tiffany's testimony, does not constitute the affirmative showing required to establish jurisdiction. ■ (See *Viner v. Sweet* (2004) 117 Cal.App.4th 1218, 1229 [12 Cal.Rptr.3d 533] [disbelief of a witness's testimony does not constitute affirmative evidence of the contrary proposition].)

---

[9] Family Code section 3424, subdivision (b), provides temporary orders made pursuant to the court's emergency jurisdiction may become a final determination of custody under circumstances not applicable to the present case.

■ Second, the juvenile court could not properly exercise subject matter jurisdiction under Family Code section 3421, subdivision (a)(2), because that provision requires the court first to conclude "[s]ubstantial evidence is available in this state concerning the child's care, protection, training, and personal relationships." (Fam. Code, § 3421, subd. (a)(2)(B).) Because Baby Boy M. has been missing since he was several days old, there is currently *no* evidence available to the juvenile court concerning these vital issues. (See *In re Marriage of Hopson, supra,* 110 Cal.App.3d at p. 894 [decided under UCCJA; "Jurisdiction requires a finding of strong contact of a child and at least one parent with the state *and* the existence of substantial evidence concerning the child's care and relationships with others."].)

■ Finally, at the present time a California juvenile court cannot assume jurisdiction under the "default" or jurisdiction-by-necessity provision of Family Code section 3421, subdivision (a)(4), which authorizes the exercise of jurisdiction if "[n]o court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2), or (3)."[10] It is true that, because Baby Boy M. was born in California and was less than six months old at the time of the dependency proceedings, no state other than California could be his home state. However, if Smith took the child to live in Atlanta, it is at least possible the Georgia courts could exercise jurisdiction under the UCCJEA because it is a state in which the child and one parent live and have a significant connection (cf. Fam. Code, § 3421, subd. (a)(2)(A)) and substantial evidence is available in that state concerning the child's care, protection, training and personal relationships (cf. Fam. Code, § 3421, subd. (a)(2)(B)). Thus, on the record before us, we cannot conclude, as required for jurisdiction under Family Code section 3421, subdivision (a)(4), that no state other than California would have jurisdiction over Baby Boy M. under the criteria of the preceding sections of the UCCJEA.[11]

### 3. *The Juvenile Court Should Not Have Proceeded to Jurisdiction and Disposition Hearings Before Locating Baby Boy M.*

■ Precisely because it is at best unclear whether the juvenile court has subject matter jurisdiction in this case and because the court lacks any

[10] No party in this case suggests jurisdiction is proper under Family Code section 3421, subdivision (a)(3), which requires a determination by the court of another state that California is the more appropriate forum to determine the custody of the child.

[11] Our conclusion California may not be able to exercise jurisdiction other than on a temporary emergency basis, while the record also fails to show that Georgia or any other state would be able to assume jurisdiction in this case, is not the incongruous result it may seem. The central jurisdictional problem at this point is that neither the juvenile court nor the Department knows where Baby Boy M. is. Once he is found (in California, Georgia or somewhere else), the question whether California has jurisdiction can be analyzed from the perspective of both the initiation of the child dependency case and the child's then current situation.

meaningful information concerning Baby Boy M., including the matters specified in Family Code section 3421, subdivision (a)(2)(B) (information regarding the child's care, protection, training and personal relationships), prudential considerations independent of the jurisdictional analysis mandate that the juvenile court should have deferred holding the jurisdictional and dispositional hearings until Baby Boy M. is located.[12] The court properly issued a protective custody warrant for Baby Boy M.; it had no reason to do anything more. (*Katheryn S. v. Superior Court* (2000) 82 Cal.App.4th 958, 969, fn. 11 [98 Cal.Rptr.2d 741] ["When the progress of ongoing dependency proceedings is thwarted because a parent absconds with his or her child and stays beyond the court's jurisdictional grasp, the court has no reason to do anything but issue warrants for their arrest and return and await their return."].)

■ "The goal of the dependency system is to ensure the safety and well-being of children while, if possible, preserving and strengthening the family. [Citations.] The court 'must control all proceedings with a view to the expeditious and effective ascertainment of the jurisdictional facts and of all information' relevant to the *present condition* and welfare of the child.' ([Cal. Rules of Court, r]ule 1412(a), italics added.)" (*In re Claudia S., supra,* 131 Cal.App.4th at p. 250.) The benefit of waiting until the child is present (or at least his location is known and his living situation assessed) is that it avoids decisionmaking by the court that may ultimately prove not in the child's best interests. In *Claudia S.,*[13] the court had ordered reunification services and then terminated them because the absent parents, who had absconded with their children, had not made substantial progress with their case plan. (*Ibid.*) By the time the family was finally located, however, the circumstances that had prompted the filing of the petition had been ameliorated; "[t]he family was living in a clean apartment, the children were clean and unharmed and

---

[12] Significantly, although the Department urges that we dismiss Tiffany's appeal under the disentitlement doctrine and asserts the juvenile court could properly assume jurisdiction over Baby Boy M. under the UCCJEA, the Department does not dispute Tiffany's contention the juvenile court should not have proceeded to jurisdiction and disposition hearings, but instead should have simply maintained the protective custody warrant in effect until the child was located. It is only Baby Boy M. through his appellate counsel who urges us to affirm the jurisdiction findings and disposition orders.

[13] *In re Claudia S., supra,* 131 Cal.App.4th 236, is distinguishable, as Baby Boy M. argues, because both parents, as well as the children, were absent when the court conducted the detention, jurisdiction and disposition hearings and counsel had not been appointed to represent them. (*Id.* at p. 249.) There were serious notice deficiencies, as well. (*Id.* at pp. 243, 247–248.) Although there are no comparable due process issues in the case at bar, the analysis in *In re Claudia S.* concerning the importance of assessing the children's "present condition and welfare"—which can only occur if the child has been located—has direct relevance to Baby Boy M.'s situation.

the two oldest girls attended school." (*Id.* at p. 251.) The court was then "in a quandary as to how to posture the case so it could legally provide services to the parents because it had already conducted the jurisdiction, disposition and review hearings. Had the court waited to conduct the jurisdiction hearing until after the children and their parents appeared and the parents had counsel to advocate on their behalf, it could have avoided this untenable position. Waiting to conduct the jurisdiction hearing would have allowed it to access the facts relevant to the children's current situation, rather than relying on out-dated information gathered before the detention hearing." (*Id.* at p. 250.)

Baby Boy M. may well be correct that there is substantial evidence not only for the juvenile court's determination it was not in Baby Boy M.'s best interest for Tiffany to receive reunification services at the present time but also for the conclusion neither the passage of time nor finding Baby Boy M. will necessarily require any modification of the court's orders with respect to Tiffany. But neither is there any benefit to Baby Boy M. in making disposition orders purportedly in his best interests without meaningful information about his current condition or living situation. Continuing the protective custody warrant for the child and, if justified, issuing an arrest warrant for Smith provide all the protection necessary and appropriate in this case. (See *Katheryn S. v. Superior Court, supra,* 82 Cal.App.4th at p. 969, fn. 11; see generally Fam. Code, §§ 3130–3135 [district attorney authorized to take all actions necessary to locate child and party to custody proceedings ·and to procure compliance with orders compelling attendance in court].) Indeed, because the juvenile court recognized it would be improper to set a permanency planning hearing for Baby Boy M. before he was located (see *Katheryn S.,* at p. 969), proceeding to the jurisdictional and dispositional hearings in his absence does not materially advance the timetable in the case or move Baby Boy M. closer to stability and permanency. (See *In re Marilyn H.* (1993) 5 Cal.4th 295, 307 [19 Cal.Rptr.2d 544, 851 P.2d 826] ["The dependency scheme, when viewed as a whole, provides the parent due process and fundamental fairness while also accommodating the child's right to stability and permanency."].)[14]

---

[14] Appellate counsel for Baby Boy M. suggests the juvenile court's jurisdiction findings and disposition order may facilitate placement and cooperation by other states under the Interstate Compact on Placement of Children (ICPC). Until Baby Boy M. is located, however, there is no need for ICPC services. Moreover, our opinion directing the juvenile court to defer holding a new jurisdiction and disposition hearing before Baby Boy M. is found should not be read to preclude the court, upon a particularized showing of need, from making any appropriate order it deems necessary to protect Baby Boy M. or to increase the likelihood he will be found.

## DISPOSITION

The jurisdiction findings and disposition orders of the juvenile court as to Baby Boy M. are reversed. The matter is remanded to the juvenile court with directions to maintain the protective custody warrant issued for Baby Boy M. in full force and effect, to set the case for periodic review hearings as required by law and to conduct other proceedings consistent with the views expressed in this opinion.

Johnson, J., and Woods, J., concurred.