[No. B138804. Second Dist., Div. One. Oct. 26, 2000.]

In re JEAN B., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND
FAMILY SERVICES, Plaintiff and Respondent, v.
DARLA B. et al., Defendants and Appellants.

## COUNSEL

No appearance for Defendants and Appellants.

Lloyd W. Pellman, County Counsel, and Gary P. Gross, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Minor.

## OPINION

**VOGEL, (MIRIAM A.), J.**—After some reunification services were provided for Jean B., a dependent of the court, he was placed with his mother, Darla B. About a month later, Jean was abducted by his father, Patrick B. Three years later, with Jean still missing and Patrick still at large, the dependency court terminated jurisdiction—at the request of Patrick's counsel and over the objection of Jean's lawyer. The Los Angeles County Department of Children and Family Services (DCFS) appeals. We reverse.

FACTS

In July 1994, the police went to the family home to investigate a report of a fight. There was no food or electricity, and Darla's 13-year-old daughter

(Lisa W.) told the police that Darla had fled with Jean (then 3 years old). Patrick then left (but only after he locked Lisa out of the apartment). The next day, Darla and Patrick were arrested on outstanding drug-related warrants. Jean and Lisa were taken into protective custody. A petition was filed and Jean was placed in shelter care; Lisa was also placed, but she has since turned 18 and is no longer involved in these proceedings. Jean was nonverbal and "very delayed in other areas."

When interviewed after her release from jail, Darla said she and Patrick fought frequently. He had been laid off. They had no money. They were about to be evicted. Patrick had a drug problem. Darla admitted that she too had used drugs and abused alcohol, but not recently. Patrick, interviewed in jail, admitted that he had used drugs but claimed he had stopped in 1993. Everything was Darla's fault, he said. He took a voluntary layoff "to teach Jean some things, including being potty trained and to make sure he had more fun and got out." Reports from others showed that both Darla and Patrick were still using drugs and that they fought all the time. In September, an amended petition was sustained and reunification services (drug rehabilitation programs and testing, parenting classes, and family counseling) were ordered.

By the fall of 1995, Darla and Patrick had completed parenting classes and some drug counseling, and they had tested negative for drugs. In October, the court gave DCFS discretion to liberalize the parents' visits. In December, Jean was returned to the parents for a 60-day visit, which went well. In February 1996, DCFS reported that both parents continued to test negative and Patrick was employed. By that time, however, Darla had moved in with her mother and had taken Jean with her to protect the child from Patrick's threats of inappropriate discipline (washing Jean's mouth out with soap). Jean was "strongly bonded with his mother" and enrolled in kindergarten. Patrick agreed to the new living arrangement, and the court formally placed Jean with Darla on February 21.

On March 3, 1996, with Darla's permission, Patrick took Jean for a walk. Patrick did not return and Darla has not seen Jean since that time. Warrants were issued on March 11, and Darla was instructed to file a missing person report (she thought Patrick might have taken Jean to Dade County, Florida, where his family lives). No information about Jean or Patrick was presented to the court at subsequent hearings in 1996 and 1997. In April 1998, Patrick's lawyer asked the court to recall the warrants. The court denied the request, finding a need for continuing jurisdiction. (Welf. & Inst. Code, §§ 300, 364, subd. (c) [all section references are to the Welfare and Institutions Code].)

In October 1998, DCFS reported that its efforts to locate Jean and Patrick had been unsuccessful, and explained that it had asked for help from the Department of Justice, the Florida Department of·Law Enforcement, Missing Children Information. Clearing House, the Crime Intelligence Analyst, and the Department of Motor Vehicles. Patrick's lawyer asked the court·to terminate jurisdiction. The court refused, explaining that it did not want to· "encourage anybody to use self-help when they disagree" with DCFS or the court.

In April 1999, DCFS filed an abduction report with the Los Angeles Police Department. On April 20, the dependency court vacated the order for Jean's placement in Darla's home and "placed" him in the care of DCFS. Patrick's renewed request for an order terminating jurisdiction was denied. In October, the court suggested that DCFS ask for help from the district attorney's "locator service." Patrick's lawyer again asked the court to terminate jurisdiction, explaining that there was "no indication that the child is at risk anymore." The court stated the obvious—that there was also no information to suggest the child was safe.

In December, DCFS still had no information—but did report that it could not find copies of the warrants, without which there could be no help from the district attorney's locator service. Patrick's lawyer again asked the court to terminate jurisdiction. Over objections from DCFS and Jean's lawyer, the court granted Patrick's request and terminated jurisdiction—because Jean "has been missing for quite some time." The warrants for Jean's return and Patrick's arrest were recalled. DCFS appeals.

## DISCUSSION

■ We agree with DCFS that the orders terminating jurisdiction and recalling the warrants were unauthorized. Leaving to one side any issue about Patrick's criminal responsibility for Jean's abduction, it is sufficient for our purposes that (1) Patrick's conduct violated the dependency court's orders and (2) the court's order (a) left an at-risk child in the custody of a father who had a history of drug abuse and (b) ignored the existence of the continuing need for jurisdiction—until Jean turns 18 or is found and returned to court. Where, as here, the progress of an ongoing dependency proceeding is thwarted by a parent's abduction of his child and by the parent's ability to avoid the court's grasp, "the court has no reason to do anything but issue warrants for their arrest and return and await their return." (*Katheryn S. v. Superior Court* (2000) 82 Cal.App.4th 958, 969, fn. 11 [98 Cal.Rptr.2d 741]; *In re Kamelia S.* (2000) 82 Cal.App.4th 1224, 1227 [98 Cal.Rptr.2d 816]; § 364, subd. (c).)

## DISPOSITION

The December 6, 1999, order is reversed, and the cause is remanded to the dependency court with directions to issue new warrants for Patrick's arrest and Jean's return, to set the matter for periodic review hearings as required by law, and to take such further action as is appropriate to secure Jean's return.

Spencer, P. J., and Ortega, J., concurred.