31 Cal.Rptr.3d 697 (2005)
131 Cal.App.4th 236
In re CLAUDIA S. et al., Persons Coming Under the Juvenile Court Law.
San Diego County Health and Human Services Agency, Plaintiff and Respondent,
v.
Fidel S. et al., Defendants and Appellants.
No. D045602.
Court of Appeal, Fourth District, Division One.
July 21, 2005.
*699 Alice C. Shotton, Lemon Grove, and Suzanne F. Evans, San Diego, under appointments by the Court of Appeal, for Defendants and Appellants.
John J. Sansone, County Counsel, Susan Strom, Chief Deputy County Counsel, Paula J. Roach, Deputy County Counsel, for Plaintiff and Respondent.
Carl Fabian, under appointments by the Court of Appeal, for the Minors.
*698 McINTYRE, J.
In this case, a mother took her minor children to Mexico knowing that the San Diego County Health and Human Services Agency (Agency) planned to file juvenile dependency petitions on their behalf based on their exposure to domestic violence. The Agency filed the petitions and the juvenile court conducted the detention, jurisdiction and disposition hearings and the 6-month and 12-month review hearings in their absence, in the absence of the presumed father and without appointing counsel on behalf of the parents. After the family reappeared in California almost a year later, the juvenile court ordered the children into foster care and provided reunification services to the parents even though there had been no recent incidents of domestic violence.
*700 The mother contends the court erred as a matter of law when it took jurisdiction because she had custody of the children when she left the United States and took them to Mexico. She asserts the court should have held the original jurisdiction hearing when the family returned and then terminated the proceedings at that time because there was no substantial evidence of a current risk to the children. The presumed father maintains the court erred in conducting the proceedings when neither the parents nor the children were present and the parents were unrepresented. The Agency asserts that the disentitlement doctrine precludes this court from hearing the parents' appeals.
We conclude that the disentitlement doctrine does not preclude these appeals. We also conclude that the juvenile court had jurisdiction over the children, but reverse all orders issued after the detention hearing and remand the matter for a new jurisdiction hearing on the ground that the absence of the family and counsel under the unique circumstances of this case rendered the proceedings fundamentally unfair.

FACTUAL AND PROCEDURAL BACKGROUND
Fidel S. and Silvia R. are an unmarried, Spanish-speaking couple with three minor children: Claudia S. (age 8), Diana S. (age 4) and Brian S. (age 2). On August 8, 2003, the Agency contacted Silvia after receiving a referral about a domestic violence incident involving Fidel. Silvia reported that she had obtained a temporary restraining order against Fidel, changed the locks and was not going to let him back into the home. On August 18, Silvia informed the social worker that she might be going to Mexico to visit her sick mother. The following day, the social worker sent a letter to Fidel's employer and left a business card with Silvia, asking that Fidel contact the Agency.
On September 4, 2003, Silvia called the social worker and said that she had received a telephone call over the weekend stating that her mother was very ill, she and the children had moved out of their apartment and were on their way to central Mexico to visit her mother for three or four months. Silvia called because she knew about a court hearing and wanted the court to wait for her return. She did not respond when the social worker asked for an address or telephone number in Mexico and did not comply with the social worker's request to call back collect in half an hour.
Later that morning, the Agency filed dependency petitions for the children alleging that Fidel had engaged in domestic violence against Silvia and that the children were at substantial risk of serious physical harm because Silvia had requested dismissal of her temporary restraining order against Fidel. (Welf. & Inst.Code, § 300, subd. (b), all statutory references are to this code unless otherwise indicated.) The police reported that there had been five previous domestic violence incidents, and Claudia said she had seen Fidel hit Silvia at least 10 times. At that time, Fidel was not living with the family and Silvia did not know where he was living.
The detention hearing commenced a few minutes after the petitions had been filed. When the parents did not appear, the court appointed counsel for the children, ordered them detained with Silvia and continued the hearing for one day to determine her whereabouts. The following day, after Silvia and the children did not appear, the juvenile court ordered the Agency to detain the children and conduct a reasonable search for Fidel. Thereafter, the social worker reported that she sent a *701 letter to Fidel's work address, but he no longer worked there.
The parents did not appear at the jurisdiction and disposition hearing on September 30 and the court did not appoint counsel for them. The court found the allegations of the petitions true, declared the children dependents, removed custody from Silvia, ordered that the children be placed in foster care when they were brought into protective custody and denied reunification services under section 361.5, subdivision (b)(1) because Silvia's whereabouts were unknown. Fidel remained an alleged father even though the Agency had attached signed paternity declarations for each child to the jurisdiction/disposition report.
On November 3, the Agency served the petition on Silvia at her last known address. The Agency never attempted service of the petition on Fidel. By the six-month review hearing, the Agency had not located the family after undertaking search efforts. At the 12-month hearing, the court terminated services, finding reasonable services had been offered, the parents had not made progress and there was no substantial probability of return by the 18-month date.
In November 2004, the Agency reported that the family had been found in San Diego and the children had been taken into custody and placed in foster care. Silvia said that Fidel had followed her to Mexico after he discovered her whereabouts and that they lived together at the grandparents' home. The grandparents had counseled the couple and there had been no more domestic violence incidents. On November 16, the court rejected the parents' argument that it lacked jurisdiction, appointed counsel for the parents, determined Fidel was the presumed father and ordered the Agency to provide referrals for services. It ordered visitation for the parents and gave the Agency discretion to place the children with them. The social worker later reported that the parents were attending services and visiting the children. On December 14, the court gave the social worker discretion to begin a 60-day trial visit. It ordered reunification services and a permanent planned living arrangement of foster care.

DISCUSSION

I. The Disentitlement Doctrine is Not Applicable
The Agency seeks to dismiss the appeals, asserting that the disentitlement doctrine bars the parents from contesting the findings and orders of the juvenile court because they showed contempt for the juvenile court process by becoming fugitives after receiving notice of the detention hearing. It contends that the doctrine applies irrespective of the fact that the parents were unrepresented and court had not made any orders before the parents left. We reject its assertions.
A reviewing court has the inherent power to dismiss an appeal by any party who has refused to comply with trial court orders. (TMS, Inc. v. Aihara (1999) 71 Cal.App.4th 377, 379, 83 Cal.Rptr.2d 834.) The disentitlement doctrine is based on the equitable notion that a party to an action cannot seek the assistance of a court while the party "stands in an attitude of contempt to legal orders and processes of the courts of this state. [Citations.]" (MacPherson v. MacPherson (1939) 13 Cal.2d 271, 277, 89 P.2d 382.) A formal judgment of contempt, however, is not a prerequisite to exercising our power to dismiss; rather, we may dismiss an appeal where there has been willful disobedience or obstructive tactics. (Alioto Fish Co. v. Alioto (1994) 27 Cal.App.4th 1669, 1683, 34 Cal.Rptr.2d 244.)
*702 The disentitlement doctrine applies to dependency proceedings. In In re Kamelia S. (2000) 82 Cal.App.4th 1224, 98 Cal.Rptr.2d 816, a father appealed an order placing his child in foster care and then absconded with the child. (Id. at pp. 1225-1226, 98 Cal.Rptr.2d 816.) The appellate court dismissed the appeal, reasoning that the father was a party to the dependency proceeding, subject to the jurisdiction and orders of the juvenile court, and had appeared and fully participated in the proceedings. (Id. at p. 1228, 98 Cal.Rptr.2d 816.) Under these circumstances, the disentitlement doctrine applied as it would be "illogical and inequitable for appellant to seek appellate review of the very orders he has blatantly violated." (Id. at p. 1227, 98 Cal.Rptr.2d 816.)
Other cases applying the doctrine also involved children abducted by the party seeking to appeal juvenile court orders. (E.g., In re Guardianship of Melissa W. (2002) 96 Cal.App.4th 1293, 1299, 118 Cal.Rptr.2d 42 [grandparents who took child out of the country in violation of court order could not appeal denial of their guardianship petition]; Adoption of Jacob C. (1994) 25 Cal.App.4th 617, 623-624, 30 Cal.Rptr.2d 591 [mother who abducted child could not challenge stepmother's petition to terminate mother's parental rights to another child].) The doctrine also has been applied to conduct that frustrates the ability of a party to obtain information it needs to protect its rights. (In re C.C. (2003) 111 Cal.App.4th 76, 85-86, 3 Cal.Rptr.3d 354 [mother's refusal to participate in a psychological evaluation interfered with the child's legal right to have her case proceed to the permanency planning stage].) In all these cases, however, the parent against whom the doctrine applied had appeared in the action and was aware of the court's orders.
Here, Silvia had oral notification of the detention hearing from the social worker and, at most, Fidel learned from Silvia that the Agency had been trying to contact him. They had received no notice from the court and there is no evidence that they had ever been involved in the juvenile dependency system or understood the potential gravity of the proceedings. Moreover, when Silvia left with the children, the dependency petitions had not yet been filed, Silvia had not appeared and the court had issued no orders. Under the facts of this case, the disentitlement doctrine does not apply.

II. Jurisdiction and Due Process
Silvia and Fidel contend that the juvenile court lacked "jurisdiction" over the dependency proceedings because it issued all orders after they and the children had already left the country. They also contend that the juvenile court violated their right to due process by making critical rulings at hearings at which they were absent, did not receive notice and were not represented by counsel. To address these contentions we review the concept of "jurisdiction" over minor children and their parents in juvenile dependency proceedings and examine whether, under the circumstances of this case, conducting the proceedings in their absence and without counsel violated their due process rights.

A. Jurisdiction Over the Minor Children
"Lack of jurisdiction" is a term used to describe situations in which a court is without authority to act. (Abelleira v. District Court of Appeal (1941) 17 Cal.2d 280, 288-291, 109 P.2d 942.) The Uniform Child Custody Jurisdiction and Enforcement Act (the Act) (Fam.Code, § 3400 et seq.) is the exclusive method for determining subject matter jurisdiction for custody proceedings in California and its provisions *703 apply to juvenile dependency proceedings. (Fam.Code, § 3402, subd. (d); In re Stephanie M. (1994) 7 Cal.4th 295, 310, 27 Cal.Rptr.2d 595, 867 P.2d 706.) Under the Act, a California court has jurisdiction in a dependency case if California was the child's home state when the proceeding commenced, with "home state" defined as the state in which the child lived with a parent for at least six consecutive months immediately before the commencement of the proceeding. (Fam.Code, §§ 3402, subd. (g), 3421, subd. (a)(1), 3422.) Here, the children were born in San Diego, Claudia previously attended school here and nothing in the record suggests that they ever lived outside California before they left to visit their grandmother in Mexico. Additionally, the record reflects that Fidel continued to reside in California for a period of time after the children left. Because California was the children's home state and no court of any other state had jurisdiction, the California juvenile court had jurisdiction to make initial child custody determinations for these children. (Fam.Code, § 3421, subd. (a)(1) & (4).)
It was not necessary for the parents or the children to be physically present in the state or for the juvenile court to have personal jurisdiction over them when the Agency filed the petitions, thereby commencing the dependency proceedings. (Fam.Code, § 3421, subd. (c) ["Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination."]; § 325.) Significantly, the juvenile court assumes dependency jurisdiction over a child; it does not take jurisdiction over the parents. (In re Daniel S. (2004) 115 Cal.App.4th 903, 916, 9 Cal.Rptr.3d 646.) Thus, the parents are mistaken to the extent they claim that the juvenile court required personal jurisdiction over them to begin the dependency proceedings.
A juvenile court is statutorily empowered to assume dependency jurisdiction over a child any time it determines a minor is described by any one of subdivisions (a) through (j) of section 300. (§ 245.) Stated differently, "a child is by definition `within the jurisdiction of the juvenile court pursuant to [s]ection 300' if he or she is one who either has or will likely suffer serious neglect or abuse, without regard to whether a section 332 dependency petition  or indeed any jurisdictional petition  has yet been filed to establish that particular child as a dependent of the juvenile court. [Citation.]" (In re Elijah S. (2005) 125 Cal.App.4th 1532, 1544, 24 Cal.Rptr.3d 16, italics omitted.) Additionally, the juvenile court may assume jurisdiction over a child described in section 300 regardless of whether the child was in the physical custody of one or both parents at the time that the events occurred that brought the child within the jurisdiction of the court. (§ 302, subd. (a).) As such, the fact Silvia had physical and legal custody of the children when she took them to Mexico is irrelevant in terms of the juvenile court's ability to assert jurisdiction over them.

B. Jurisdiction Over the Parents
Having determined that the juvenile court properly exerted jurisdiction over the children, we turn to the question of whether the court had personal jurisdiction over the parents. The juvenile court obtains personal jurisdiction over a parent when the individual is properly noticed. (In re Daniel S., supra, 115 Cal.App.4th at p. 916, 9 Cal.Rptr.3d 646.)
Parents are entitled to due process notice of juvenile court proceedings affecting the care and custody of their children and the absence of due process notice to a parent is a "fatal defect" in the juvenile court's jurisdiction. (In re B.G. *704 (1974) 11 Cal.3d 679, 688-689, 114 Cal.Rptr. 444, 523 P.2d 244.) Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (Mullane v. Central Hanover Bank & Trust Co. (1950) 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865.) The means employed to give a party notice for due process purposes must be such as one, desirous of actually informing the party, might reasonably adopt to accomplish it. (In re Antonio F. (1978) 78 Cal.App.3d 440, 450, 144 Cal.Rptr. 466, disapproved on other grounds in In re Laura F. (1983) 33 Cal.3d 826, 830, 191 Cal.Rptr. 464, 662 P.2d 922.)
If the whereabouts of a parent are unknown, the issue becomes whether due diligence was used to locate the parent. (In re Emily R. (2000) 80 Cal.App.4th 1344, 1352, 96 Cal.Rptr.2d 285; citing Mullane v. Central Hanover Bank & Trust Co., supra, 339 U.S. at pp. 317 & 319, 70 S.Ct. 652.) The term reasonable or due diligence, "denotes a thorough, systematic investigation and inquiry conducted in good faith." (David B. v. Superior Court (1994) 21 Cal.App.4th 1010, 1016, 26 Cal.Rptr.2d 586.) Due process notice requirements are deemed satisfied where a parent cannot be located despite a reasonable search effort and the failure to give actual notice will not render the proceedings invalid. (In re Melinda J. (1991) 234 Cal.App.3d 1413, 1418-1419, 286 Cal.Rptr. 239.)

1. The Detention Hearing

Silvia does not argue that she was unaware of the detention hearing, nor can she as it is undisputed that she received actual verbal notification of the hearing from the social worker. Although Silvia does not complain about the lack of written notice, the dependency statutes contemplate that, where as here, a child is not taken into custody, written notice of the initial petition hearing and the petition must be served on the mother and the alleged or presumed father at least 10 days prior to the date of the hearing by first-class mail. (§ 290.2, subds. (a) & (c)(2).) If the child is not in custody, the court must set the matter for hearing within 30 days after the filing of the petition. (§ 334.)
Under specific circumstances the dependency statutes allow a child to be taken into custody before a petition is filed if there is reason to believe the child is in immediate danger (§§ 305, subd. (a), 305.6, subd. (a), 306, subd. (a).) In these situations, the detention hearing must be held as soon as possible, but not later than the end of the next judicial day after filing the petition. (§ 315.) Here, however, the children were not taken into custody and the detention report recommended that Silvia retain custody. Under these circumstances, the Agency should have filed the petition, scheduled the hearing and given Silvia at least 10 days written notification of the initial hearing. (§§ 290.2, 334.) Instead, it gave her oral notification seven days before the hearing and before the petitions had even been filed. Thus, Silvia received improper notice of the detention hearing.
Fidel contends that he did not receive proper notice of the detention hearing. At the time of this hearing, Fidel was an alleged father entitled to notice of the proceedings and an opportunity to appear and establish his paternity. (In re Paul H. (2003) 111 Cal.App.4th 753, 760, 5 Cal.Rptr.3d 1.) If the identity and address of an alleged father cannot be discovered after exercising due diligence, due process is satisfied by publishing notice of the proceedings. (In re Emily R., supra, 80 Cal. *705 App.4th at p. 1352, 96 Cal.Rptr.2d 285.) An alleged father is not a party to a dependency proceeding until he appears in the action. (Id. at p. 1356, 96 Cal.Rptr.2d 285.) Here, the Agency attempted to notify Fidel of the detention hearing, but the record is silent as to what methods the Agency used to attempt notice. On this record we cannot say that the Agency exercised due diligence in attempting to notice Fidel of this hearing. Because Silvia and Fidel did not receive proper notice of the detention hearing, the court lacked jurisdiction over them.

2. The Jurisdiction Hearing and Subsequent Hearings

Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (In re Melinda J., supra, 234 Cal.App.3d at p. 1418, 286 Cal.Rptr. 239.) The Agency claims it made significant efforts to notice the parents for each subsequent hearing. Our review of the record supports this assertion.
The Agency undertook a reasonably diligent search for Fidel immediately after the detention hearing. Its actions included, among other things, sending a letter to his last known work address, seeking a forwarding address and searching law enforcement records and telephone directories. Although the Agency did not undertake a search for Silvia before the jurisdiction hearing, it did mail notice of the hearing to her last known address and later undertook significant efforts to discover her and Fidel's whereabouts. The Agency initiated an international/transborder search for the parents, obtained the assistance of an investigator from the district attorney's child abduction unit, asked the Mexican Consulate office for assistance, conducted a statewide search for people with Silvia's last name and searched telephone directories, Medi-Cal records and the school system. Thus, this case did not involve a total lack of effort on the part of the Agency to notice the parents of the dependency hearings and its efforts satisfied due process. (In re Melinda J., supra, 234 Cal.App.3d at pp. 1418-1419, 286 Cal.Rptr. 239.) Stated differently, there is nothing more the Agency could have done to notify the parents of these proceedings.
Our conclusion that the Agency exercised due diligence in attempting to notify the parents of these hearings does not change the fact that, at most, only Silvia had actual notice of the initial detention hearing. Furthermore, the court conducted the jurisdiction and disposition hearings and the 6-month and 12-month review hearings without them and without appointing counsel for them. The Agency concedes that these proceedings were not "perfect," admits that the juvenile court should not have made findings and orders at the review hearings, but contends that the court properly conducted the jurisdiction and disposition hearings. We accept their concession, but conclude that the trial court should have halted the proceedings before the jurisdiction hearing.
At the initial hearing on the petition, the juvenile court must inform the parents of the contents of the petition and the nature and possible consequences of the juvenile court proceedings. (Cal. Rules of Court, rule 1441(a), all rule references are to the California Rules of Court.) At this hearing, and all following hearings, the court must advise the parents of their right to be represented by counsel and it must appoint counsel for any parent that is unable to afford counsel. (§§ 316, 317, subd. (b); rule 1412(g), (h).) If the Agency makes a prima facie showing that the child comes *706 within section 300, the court may detain the child. (§ 319, subd. (a); rule 1446(a).)
Upon the filing of a dependency petition, the juvenile court has the authority to issue a citation directing the parent to appear and bring the child to court (§ 339; rule 1408(a)) and it may order an arrest warrant for the parent if the citation cannot be served and a protective custody warrant for the child if it finds the child's home environment may endanger the child. (§ 340; rule 1408(b), (c).) At the jurisdiction hearing the children and their parents were missing, their whereabouts were unknown and there was no reason for the court to do anything more than issue citations for the parents to appear and ultimately issue warrants for the parents and the children. (In re Jean B. (2000) 84 Cal.App.4th 1443, 1446, 101 Cal.Rptr.2d 522; Katheryn S. v. Superior Court (2000) 82 Cal.App.4th 958, 969, fn. 11, 98 Cal.Rptr.2d 741.)
We reject the Agency's assertion that it was in the children's best interest to move these proceedings through the jurisdiction and disposition hearings because they would be harmed by the passage of time if the court waited to conduct these hearings until the Agency located them and their parents. The goal of the dependency system is to ensure the safety and well-being of children while, if possible, preserving and strengthening the family. (§§ 202, 300.2.) The court "must control all proceedings with a view to the expeditious and effective ascertainment of the jurisdictional facts and of all information relevant to the present condition and welfare of the child." (Rule 1412(a), italics added.)
Here, the court conducted the jurisdiction, disposition and review hearings without the children, the parents or counsel for the parents based on the social worker's initial report. It ordered reunification services and then terminated such services because the parents had not exhibited substantial progress with their case plan. These hearings constituted "a fiction [] to move the case toward final resolution" because the Agency never detained the children and the parents never received any services. (In re Katheryn S., supra, 82 Cal.App.4th at p. 969, 98 Cal.Rptr.2d 741.) In the absence of the children and the parents, all proceedings after the detention hearing constituted a continuing charade played out for the benefit of no one.
When the family resurfaced, the court was in a quandary as to how to posture the case so it could legally provide services to the parents because it had already conducted the jurisdiction, disposition and review hearings. Had the court waited to conduct the jurisdiction hearing until after the children and their parents appeared and the parents had counsel to advocate on their behalf, it could have avoided this untenable position. Waiting to conduct the jurisdiction hearing would have allowed it to access the facts relevant to the children's current situation, rather than relying on out-dated information gathered before the detention hearing. (Rule 1412(a).) Specifically, Claudia and Diana both reported that they went to Mexico to meet their ailing grandmother, that Fidel no longer hit Silvia and they were not afraid of their parents. Silvia also reported that there were no new incidents of domestic violence in Mexico or in San Diego since their return and that her parents provided guidance after Fidel joined the family in Mexico. The family was living in a clean apartment, the children were clean and unharmed and the two oldest girls attended school.
To determine whether a parent had a due process right to representation we look to see whether the presence of counsel would have made a "determinative difference" in the outcome of the proceeding *707 and if the absence of counsel rendered the proceedings fundamentally unfair. (In re Ronald R. (1995) 37 Cal.App.4th 1186, 1196-1197, 44 Cal.Rptr.2d 22, citing Lassiter v. Department of Social Services (1981) 452 U.S. 18, 33, 101 S.Ct. 2153, 68 L.Ed.2d 640.) Here, counsel for the parents could have informed the court of the irregularities regarding notice of the detention hearing and suggested issuing warrants for the children and parents as a preferable alternative to proceeding through the entire dependency process without them. Thus, counsel could have halted these fictitious proceedings before the court made jurisdictional findings that ultimately triggered the granting and termination of reunification services to parents who happened to be living with their children and had no way of taking advantage of those services.
The Agency's argument that there was no due process violation because the parents failed to appear and request counsel ignores the unique and unusual circumstances of this case. Silvia took the children to Mexico before the Agency commenced the proceedings by filing the petitions. (§ 325.) Although Silvia had oral notice from the social worker of the detention hearing date we do not know the extent of that notice, she and Fidel received no actual notice of the subsequent hearings and they received no advisements from the court regarding their legal rights, including their right to counsel. Although it was wrong for Silvia to leave the country with the children knowing of the hearing, the purpose of dependency proceedings is to protect the child, not to punish the parent. (In re Mary S. (1986) 186 Cal.App.3d 414, 418, 230 Cal.Rptr. 726; § 203.) Pursuing these proceedings in the absence of the entire family failed to serve the best interests of these children and resulted in unnecessary expense to the state. The parents are entitled to a new jurisdiction hearing at which their positions can be presented and duly considered based on the current circumstances.

DISPOSITION
All orders issued after the detention hearing are reversed and the matter is remanded to the juvenile court with directions to conduct a new jurisdiction hearing based on present circumstances.
WE CONCUR: HALLER, Acting P.J., and McDONALD, J.