Filed 9/27/13  Timothy K. v. Superior Court CA5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| TIMOTHY K., | F067569 |
| Petitioner, | |
| v. | (Super. Ct. No. JD128567) |
| THE SUPERIOR COURT OF KERN COUNTY, | |
| Respondent; | **O P I N I O N** |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES, | |
| Real Party in Interest. | |

## THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  Louie L. Vega, Judge.

Marc D. Widelock for Petitioner.

No appearance for Respondent.

Theresa A. Goldner, County Counsel, and Elizabeth M. Giesick, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*]	Before Gomes, Acting P.J., Kane, J., and Detjen, J.

Timothy K. seeks extraordinary writ review from the juvenile court's order setting a Welfare and Institutions Code section 366.26 hearing[1] as to his four-year-old twin daughters, Jasmine and Lily. At the setting hearing, the juvenile court found Timothy unfit and terminated reunification services for the children's mother, Melody. Timothy contends the juvenile court denied him due process by not appointing him counsel at the detention hearing. We agree the juvenile court erroneously delayed in appointing counsel and grant the petition.

**PROCEDURAL AND FACTUAL SUMMARY**

In April 2012, the Kern County Department of Human Services (department) removed then three-year-old Jasmine and Lily (born January 2009) from Melody's custody because Melody used methamphetamine while caring for them and left guns, drugs, and paraphernalia including a razor blade within their reach. Melody identified Timothy as the children's father but said she did not have any contact information for him.

On April 13, 2012, at the detention hearing, Melody's attorney made an offer of proof Melody would testify she was not married, had never married, and only Timothy could be the children's father. Timothy had signed a voluntary declaration of paternity and his name was on the birth certificates. He held the children out as his own but did not reside with them. He had visited them one time since their birth. Melody believed Timothy was living in San Diego. The juvenile court ordered the children detained.

On May 11, 2012, the juvenile court convened the jurisdictional hearing. County counsel requested a continuance to serve Timothy notice of the hearing and conduct a diligent search. The court continued the hearing to June 11, 2012.

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

Meanwhile, the department filed copies of the children's birth certificates for the purpose of including their middle names in the court records. Timothy is named as the father on both birth certificates.

On June 11, 2012, the department filed the results of its unsuccessful search to locate Timothy. During the search, the department (a paralegal) found an address for Timothy and an ex-wife in Ridgecrest. The ex-wife said Timothy no longer lived at that residence and she did not know where he was. The paralegal also had inquired further of Melody about a possible San Diego address. Melody said she had not seen him in a year and had no contact information for him.

On June 11, 2012, the juvenile court convened the jurisdictional/dispositional hearing (combined hearing). County counsel advised the court Melody had provided a new address for Timothy on Lisbon Street in San Diego and requested a continuance to verify the address and provide him notice. The juvenile court continued the hearing until July 9, 2012. The children were placed with Edwin and Elin B., the children's maternal uncle and aunt.

On June 12, 2012, the department sent Timothy notice of the combined hearing at the Lisbon Street address by certified mail return receipt requested.

In its report for the combined hearing, the department recommended the juvenile court adjudge the children dependents of the court and provide Melody reunification services. The department recommended the juvenile court deny Timothy reunification services stating he was "merely an alleged father who has not sought to establish paternity." The department also reported Timothy had an extensive criminal history, mostly involving drugs and domestic violence and had not been involved in the children's lives.

In a supplemental report, the department informed the juvenile court the United States Post Office website indicated that notice of the hearing was left at Timothy's

3

residence on June 14, 2012. The website states that if an item is unclaimed after fifteen days it will be returned to the sender. There is no evidence in the record that Timothy signed for the notice or whether it was returned to the department.

On July 9, 2012, Melody appeared at the combined hearing and submitted the matter to the court. The juvenile court found Timothy was provided proper notice, adjudged the children dependents, and removed them from Melody's custody. The court denied Timothy reunification services, stating "he [was] merely an alleged father who has not sought to establish paternity." The court ordered reunification services for Melody and set the six-month review hearing for January 2013. The department served Timothy notice of the hearing by first class mail at an address in Hemet, California.

In December 2012, the twins were removed from Edwin and Elin's custody and placed in foster care with William and Alexis E.

In January 2013, the juvenile court continued Melody's reunification services to the 12-month review hearing, which it set for June 2013. The court found she had made minimal progress because she was not participating in drug treatment or drug testing. The court found Timothy had been provided proper notice.

In January 2013, Edwin and Elin filed a petition under section 388 asking the juvenile court to return the children to their custody because it was what Timothy and Melody wanted. That same month, the juvenile court denied the petition, finding it did not state new evidence or a change of circumstances.

In February 2013, Nolan and Barbra B., the children's maternal great-grandparents, filed a section 388 petition asking the juvenile court to place Jasmine and Lily in their care. As changed circumstances, they cited contact with Timothy and his desire that they have guardianship over the twins. They attached a letter from Timothy, stating he was present during the twins' birth and he and Melody lived with Nolan and Barbra and the twins until June 2009. He and Melody separated and he moved to San

4

Diego. They shared custody of the twins and he said he often went to see the twins for a week at a time. The juvenile court set a hearing on the petition for April 4, 2013.

In March 2013, Alexis filed a "Caregiver Information Form," describing the behavioral improvements she had observed in the girls since they were placed in her home. When the twins were placed with her, they were not potty trained, they threw tantrums lasting up to 30 minutes, and they hit, bit, kicked, screamed and destroyed property. They were afraid of being locked in their room, of the dark, and of being left alone. In their short time with Alexis and her husband, the twins' behavior had improved dramatically. They were potty trained and their fears had diminished.

On April 4, 2013, Timothy appeared for the first time and submitted a "Statement Regarding Parentage" (JV-505), asking the juvenile court to appoint him an attorney and enter a judgment of parentage. He indicated on the JV-505 that he already had established parentage of the twins by signing a voluntary declaration at their birth. The juvenile court declared Timothy the twins' presumed father and appointed him counsel. The juvenile court continued the hearing on Nolan and Barbra's section 388 petition to June 7, 2013.

Meanwhile, at the department's request, the twins' psychologist, Lorin Lindner, submitted a letter addressing the children's psychological status. She stated they were diagnosed with adjustment disorder and reactive attachment disorder. Given their diagnoses, she opined they should remain with Alexis and William to minimize any disruptions.

Also during this interim period, Alexis and William requested the juvenile court deem them the children's de facto parents and Timothy filed a section 388 petition asking the juvenile court to provide him reunification services.

In a report, the department advised against providing Timothy reunification services. In its view, Timothy received proper notice throughout the proceedings but

5

made no attempt to elevate his paternity status and participate in the proceedings until Nolan and Barbra requested placement of the children in April 2013. In addition, Timothy did not inquire about the children or request visitation prior to or after being elevated to presumed father status. The department opined it would not be in the children's best interest to offer Timothy reunification services because of Timothy's lack of involvement and Alexis and William's desire to adopt them.

On May 30, 2013, the juvenile court conducted the section 388 petition as to Timothy. Timothy's attorney presented his evidence by offer of proof that Timothy lived with the twins and Melody for six months after the children's birth. He and Melody separated and he moved to San Diego. He continued to see the children until they were two years old for one week every two months. Subsequently, he committed felony vandalism and enrolled in a residential drug treatment program for six months. During that time, he was not allowed to leave the facility. Subsequently, he was placed on probation. In April 2013, he was granted permission from probation to leave San Diego and see the children. He sent as much money as he could afford, sent gifts on birthdays, and clothing. He asked the court to provide him reunification services believing there was a strong possibility he could reunify with them if given the opportunity.

County counsel asked the juvenile court to deny Timothy's section 388 petition and to find him unfit, citing his criminal history and probation status.

The juvenile court denied Timothy's section 388 petition, commenting that he ignored the proceedings and had done nothing up to that point. The court deferred the issue of unfitness and denied Timothy's request for visitation. Timothy did not appeal from the juvenile court's order denying his section 388 petition.

On June 7, 2013, at the hearing on his section 388 petition, Nolan testified all he and Barbra wanted was to be grandparents to the children. He said the children lived with him and Barbra for the first year and a half. When Timothy left for San Diego, he

6

"charged" them with taking care of the children while he was away. Within weeks of Melody's arrest and the children's removal, two family members died and Barbra fell into a deep depression. However, he said she was in excellent health now and he believed they could take care of the children.

At the conclusion of the hearing, the juvenile court denied Nolan and Barbra's section 388 petition and granted Alexis and William de facto parent status.

On July 9, 2013, the juvenile court convened a hearing on the issue of Timothy's unfitness and the 12-month review hearing. Prior to the hearing, the department filed a report advising the juvenile court it would be detrimental to place the children with Timothy. In addition to Timothy's delay in participating in the proceedings, the department stated Timothy left the children in Melody's care knowing that she was using drugs and that he had a drug conviction in 2011 for possession of controlled substances. In addition, Jasmine and Lily required ongoing mental health care and there was no evidence Timothy was able to provide them the care they required.

Timothy testified he was living in San Diego at the Lisbon address at the time of the detention and jurisdictional/dispositional hearings but did not receive any information about the hearings. He said the department did not inform him the children were removed from Melody but Nolan did in June or July 2012. Nolan also told him the children were placed with Edwin and Elin. He did not contact the department because he knew the children were with family and he could not care for them himself. He was on probation in San Diego County and despite repeated requests was not able to leave the county. In December 2012, however, after learning the children were removed from Edwin and Elin, he went to Bakersfield, violating his probation, to investigate the situation. He concluded the best course of action was to support Nolan and Barbra in getting custody of the children until he could return legally. As a result of his probation violation, his probation was extended; however, his case was transferred to Kern County

7

in April 2013. He said he did not know his parental rights were in jeopardy. Had he known, he would have acted sooner.

Timothy further testified he last used drugs in 2006 and had no knowledge that Melody was using drugs while he lived with her and the children. He said the children were not born with drugs in their systems. He also said he was never convicted of a drug-related offense but his adult son who shared his name was.

Social worker Andrea Kelley testified she obtained Timothy's criminal history from three different people at three different courthouses and there were numerous charges associated with Timothy's son. She conceded she did not know if the criminal history she was given was correct.

At the conclusion of the hearing, the juvenile court found Timothy unfit, terminated Melody's reunification services, and set a section 366.26 hearing. This petition ensued.[2]

## DISCUSSION

Timothy contends Melody's offer of proof at the detention hearing in April 2012 established his presumed father status and the juvenile court violated his due process rights by not appointing him counsel at that time. Real party in interest contends Timothy was an alleged father until he appeared in April 2013 and the juvenile court deemed him the presumed father. Real party also contends Timothy forfeited the right to challenge the proceedings at the detention hearing by failing to appeal from the dispositional hearing.

**No Forfeiture**

We begin our discussion with *In re Meranda P*. (1997) 56 Cal.App.4th 1143 (*Meranda P*.), our lead case on the forfeiture rule in dependency proceedings. In

---

**2**     Melody did not file a writ petition.

8

*Meranda P.*, we applied the familiar principle that "an appellate court … may not inquire into the merits of a prior final appealable order on an appeal from a later appealable order …." in affirming a mother's appeal from an order terminating her parental rights. (*Id*. at pp. 1151, 1166.) The mother in that case argued she was denied effective assistance of counsel throughout the proceedings. However, she declined counsel at the detention hearing, never complained to the court about any representational problems, and did not challenge the setting order by petition for extraordinary writ. (*Id*. at p. 1158.)

We declined to carve out an exception to the forfeiture doctrine even though the important right to counsel was at stake. (*Meranda P*., *supra*, 56 Cal.App.4th at p. 1151.) In large part this was because the enforcement of the doctrine under the circumstances did not infringe the mother's due process rights. (*Ibid*.)

Further, we recognized that "'[a] parent who is unable to present an adequate defense from the outset may be seriously disadvantaged later.'" We also recognized that "[u]ntil permanency planning, the parent's interest in having a child returned to the parent is the paramount concern of the law." Nevertheless, we reasoned "there are significant safeguards built into this state's dependency statutes which tend to work against the wrongful termination of a parent's right to a child even though a parent may be unrepresented or poorly represented." (*Meranda P*., *supra*, 56 Cal.App.4th at p. 1154.)

However, *Meranda P*. "did not create an *absolute* bar to review of ineffective assistance, right to counsel, or other claims tardily presented on a .26 hearing appeal." (*In re Janee J*. (1999) 74 Cal.App.4th 198, 208.) The particular facts of each case must be reviewed to determine whether an exception to the forfeiture rule should be made. An exception is warranted where the parent can show "some defect that fundamentally undermined the statutory scheme so that the parent would have been kept from availing himself or herself of the protections afforded by the scheme as a whole." (*Ibid*.) The crux of *Meranda P*. is forfeiture will be enforced unless due process forbids it. (*Ibid*.)

9

We conclude it would be fundamentally unfair to enforce the forfeiture rule in this case because to do so would infringe on Timothy's due process rights as the children's father. "Although a parent's right to counsel in dependency proceedings derives from statute (§ 317), a parent has a constitutional right to counsel at some stages of those proceedings. [Citation.] We determine whether a parent has that right on a case-by-case basis and consider the factual circumstances and procedural setting of the case at the time the error is said to have occurred. [Citations.]" (*In re O.S.* (2002) 102 Cal.App.4th 1402, 1407 (*O.S.*).)

"To determine whether federal constitutional rights are implicated, we examine: (1) the private interests at stake; (2) the government's interest; and (3) the risk that the procedures used will lead to an erroneous decision. [Citation.]" (*O.S.*, *supra*, 102 Cal.App.4th at p. 1407.) In this case, we conclude the juvenile court erred in not appointing counsel for Timothy prior to the dispositional hearing.

**Failure to Recognize Timothy's Presumed Father Status**

The Family Code and the Welfare and Institutions Code differentiate between "alleged" and "presumed" fathers. (*In re Zacharia D*. (1993) 6 Cal.4th 435, 448-449.) "'An alleged father in dependency or permanency proceedings does not have a known current interest because his paternity has not yet been established.'" (*In re Joseph G.* (2000) 83 Cal.App.4th 712, 715.) Thus, he is not a parent and therefore not entitled to appointed counsel or reunification services. (*In re Paul H*. (2003) 111 Cal.App.4th 753, 760.) "Due process for an alleged father requires only that the alleged father be given notice and 'an opportunity to appear and assert a position and attempt to change his paternity status. [Citations.]' [Citation.]" (*Ibid*.)

A presumed father, in contrast, is the child's "parent." He is accorded the greatest paternity rights, including custody and reunification services. (*In re Zacharia D*., *supra*, 6 Cal.4th at pp. 448, 451.)

10

Family Code section 7611 sets forth the conditions under which a man may achieve presumed father status. If, as here, he neither legally married nor attempted to legally marry the child's natural mother, then he can only achieve presumed father status if he received the child into his home and openly held the child out as his natural child, or, along with the natural mother, executed a voluntary declaration of paternity. (Fam. Code, §§ 7611, 7570.)

A man is presumed to be the natural father of a child if he files a voluntary declaration of paternity. (Fam. Code, §§ 7611, 7573.) To be valid, the declaration must be signed by the mother and the father. (*Id.*, § 7574, subd. (b).) By completing and signing the voluntary declaration, the man is declaring that he is the child's biological father and that he consents to the establishment of paternity. (*Id.*, subd. (b)(6).) The natural mother, by her signature, is declaring that the man signing the declaration is the "only possible father." (*Id.*, subd. (b)(5).) A voluntary declaration of paternity entitles the man who signs it to presumed father status. (*Id.*, § 7611.)

Here, Melody told the juvenile court at the detention hearing that she and Timothy had signed a voluntary declaration. Thus, there was evidence before the court that Timothy was the children's presumed father. Though the record does not contain the voluntary declaration, it does contain the children's birth certificates identifying Timothy as their father. The birth certificates constituted prima facie evidence that Timothy signed a voluntary declaration and raised a presumption of his presumed father status. (*In re Raphael P.* (2002) 97 Cal.App.4th 716, 738.) Ultimately, Timothy appeared and additionally established that he received the children into his home and held them out as his natural children.

In our view, there was sufficient evidence before the juvenile court anytime at or between the detention and dispositional hearings to find that Timothy was the children's

presumed father and to appoint him counsel. It was the court's failure to do so by the dispositional hearing that violated Timothy's due process right to appointed counsel.

**Failure to Appoint Counsel at a Critical Stage**

"A parent's desire for and right to 'the companionship, care, custody, and management of his or her children' is an important interest that 'undeniably warrants deference and, absent a powerful countervailing interest, protection.' [Citation.]" (*Lassiter v. Department of Social Services* (1981) 452 U.S. 18, 27 (*Lassiter*).) "A parent's interest in the accuracy and justice of the decision to terminate his or her parental status is, therefore, a commanding one." (*Ibid*.)

The state has "an urgent interest in the welfare of the child...." Thus, "it shares the parent's interest in an accurate and just decision." (*Lassiter*, *supra*, 452 U.S. at p. 27.) The state's interest diverges, however, from that of the parent insofar as the state wants the "termination decision to be made as economically as possible and thus wants to avoid both the expense of appointed counsel and the cost of the lengthened proceedings his presence may cause." (*Id*. at p. 28.)

Further, the state is superiorly positioned to advance its interest. It has legal representation through the county attorney who has access to public records regarding the family and to social workers empowered to investigate the family situation and to testify against the parent. (*Lassiter*, *supra*, 452 U.S. at p. 42.)

A parent's interest in the care and custody of his or her child is perhaps greatest at the dispositional hearing. At this hearing, the juvenile court may remove the child from parental custody. (§ 361.) If it does, the juvenile court must order reunification services for a presumed father unless the department proves by clear and convincing evidence that one of the exceptions contained in section 361.5, subdivision (b) applies. These exceptions reflect the Legislature's determination that reunification services in some cases may be futile. (*In re Baby Boy H*. (1998) 63 Cal.App.4th 470, 478.) The juvenile

12

court does not have to consider ordering reunification services for an alleged father because he is not entitled to them under subdivision (a) of section 361.5.

Thus, going in to the dispositional hearing, Timothy's parental rights were at great risk with no protection. First, they were not recognized as he was wrongly considered an alleged father. As a result, he was deprived of the right to be considered for reunification services. Further, the juvenile court denied him reunification services under section 361.5, subdivision (a) instead of under one of the exceptions of section 361.5, subdivision (b) without forcing the state to meet its burden of showing by clear and convincing evidence that an exception applied. Additionally, by denying Timothy services, the juvenile court placed his parental rights in immediate jeopardy. Indeed, a decision to deny reunification services renders the decision to terminate parental rights "relatively automatic if the minor is going to be adopted." (*Cynthia D*. *v. Superior Court* (1993) 5 Cal.4th 242, 249-250.)

We conclude, based on the foregoing, the juvenile court violated Timothy's right to due process by not appointing him counsel at a critical stage in the proceedings given the evidence pointing to Timothy's presumed father status, the adversarial position of the department, the threatened loss of Timothy's parental rights, and the risk of making an erroneous ruling.

**Prejudice**

Having concluded the juvenile court erred in not appointing counsel for Timothy, the question of prejudice arises. To determine whether a parent had a due process right to representation, we look to see whether the presence of counsel would have made a "'determinative difference'" in the outcome of the proceeding and if the absence of counsel rendered the proceedings fundamentally unfair. (*In re Claudia S*. (2005) 131 Cal.App.4th 236, 251.)

Under the circumstances, we conclude Timothy was prejudiced by the lack of counsel. First, counsel would have recognized Timothy's presumed father status, asked the juvenile court to make the paternity finding, and pointed out the error of the department's recommendation to deny Timothy reunification services. As a presumed father, Timothy was entitled to services absent evidence to support any of the exceptions. Had the juvenile court ordered a plan of reunification to be implemented when he appeared, Timothy would not have had to file a section 388 petition to request services. Instead, the department would have implemented the court-ordered plan. Further, there would have been no need to determine Timothy's fitness.

Because we conclude the juvenile court violated Timothy's due process right to appointed counsel, we need not review his contentions the juvenile court erred in finding he was provided proper notice, denying his section 388 petition, and finding him unfit.

## DISPOSITION

Let an extraordinary writ issue directing respondent court to vacate its order of July 9, 2013, setting the Welfare and Institutions Code section 366.26 hearing, reverse its order denying Timothy's section 388 petition, and its finding that Timothy is unfit. Respondent court is further directed to conduct a dispositional hearing as to Timothy, declare him the children's presumed father, and order reunification services for him unless the court finds a basis for denial under section 361.5, subdivision (b). This order is final forthwith as to this court.

14