Filed 6/10/22  In re S.M. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| In re S.M., a Person Coming Under the Juvenile Court Law. | C093415 |
| YOLO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>S.M.,<br><br>Plaintiff and Appellant. | (Super. Ct. No. JV2017564) |

Appellant S.M., Sr., (father) contends the efforts by the Yolo County Health and Human Services Agency (Agency) to provide father with notice of this dependency case did not constitute reasonable due diligence.  Father says he heard about the case eight months after the Welfare and Institutions Code section 366.26[1] hearing.

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

We will affirm the trial court's findings that a reasonable search for father was conducted and that it was not in the minor's best interests to return to the jurisdictional phase.

BACKGROUND

In November 2017, the Agency filed a section 300 petition with respect to minor S.M. (then five years old) and his minor half-sibling (then two years old). The petition alleged that S.M. came within section 300, subdivisions (b)(1) [failure to protect] and (g) [no provision for support]. The petition alleged, among other things, that father's whereabouts were unknown.

The November 2017 initial non-detaining report stated that on November 30, 2017, the social worker contacted Yolo County Child Support Services and learned that Father signed a declaration of paternity at Alta Bates Medical Center in Alameda County at the time of S.M.'s birth. The report also stated that the social worker submitted a due diligence search and attempted to contact father by phone and by mail. The report included Criminal Offender Record Information regarding father, obtained through the California Law Enforcement Telecommunication System, which listed criminal convictions for father covering the time period from December 15, 1998 to January 24, 2017, and listed 25 separate convictions. Based upon the dates, five of those cases could possibly still have been on active probation status on November 15, 2017.

The matter was set for a jurisdiction hearing on December 14, 2017. The original jurisdiction report documented that mother reported she had not seen father since the year 2013, when the minor was a year old. The report also listed an address for father at 24900 Santa Clara St., Hayward, California. Subsequently, the original disposition report dated March 15, 2018, stated that father signed a declaration of paternity but failed to establish a parent-child relationship with the minor. The report included the same Santa Clara Street address in Hayward and included a phone number. The social worker mailed letters to father at the last known address and attempted to call him at the number on at

2

least five occasions, including December 4, 2017, December 18, 2017, January 11, 2018, February 7, 2018, and March 1, 2018. The phone number was listed as no longer in service. At the disposition hearing, the juvenile court noted, "I don't think we have any presumed fathers. We have a few alleged dads." The juvenile court ordered no contact between the fathers and the minors.

On March 30, 2018, the minors had to be removed from the mother's care, resulting in the filing of a section 387 supplemental petition on April 3, 2018. The petition again alleged under section 300, subdivision (g), that father's whereabouts were unknown. The April 4, 2018 detention report again reported father's criminal history. The case was set for a jurisdiction hearing, and the section 387 jurisdiction report, dated April 25, 2018, documented the efforts the social worker made, including multiple telephone call attempts to contact father between December 2017 and March 2018, and mirrored the information from the March 15, 2018 disposition report. The section 387 disposition report recommended no reunification services for father, as he did not rise to presumed father status. After a contested disposition hearing, the juvenile court stated in its minute order: "The Court orders no services or visitation to either father at this time as they are only legal at this time."

Father was sent notice of the six-month section 366.21, subdivision (e) hearing at the Hayward, California address on Santa Clara Street. The six-month review report dated December 5, 2018, recommended that services cease to the mother and that a hearing pursuant to section 366.26 be set. The minor was reported to show developmental delays, including speech and cognitive delays, and was placed in an Intensive Services Foster Care placement. An Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901, et seq) Notice of Child Custody Proceeding for Indian Child (form ICWA-30) was sent on January 9, 2019, and included multiple aliases for father along with a new phone number and address: 24100 Amador St., Hayward, California. The ICWA-30 notice was mailed to father at the Amador Street address. On January 30,

3

2019, the juvenile court held a contested six-month review, ceased services for mother, and set a hearing pursuant to section 366.26. Notice for the hearing was sent by certified mail to father at the 24100 Amador St., Hayward, California address, and was returned signed as delivered on January 10, 2019; however, the signature was not legible. Notice was also sent via certified mail to father at 901 35th Ave., Apt 7 in Oakland, California, but was returned unclaimed and unsigned.

On March 29, 2019, the Agency filed an affidavit of inability to serve father, listed the efforts made by the Agency to locate him, and requested a court order to publish notice to father. The affidavit stated that on March 15, 2019, an Office Support Specialist searched Vinelink, Sacramento County Jail Inmate Locator, CalWin, Medi-Cal Eligibility Data System (MEDS), Facebook, Google, and People Looker, with no viable results from any of those sources. It was also noted in the section 366.26 report dated May 22, 2019, that in addition to the attempts listed in the affidavit, the Agency had also searched the California Department of Corrections and Rehabilitation database and had searched the County Jail Vinelink for the State of California, Alameda County Jail inmate search, Sacramento County Jail inmate search, MEDS, and CalWin with no results. The Agency reported that letters had been sent to all identified addresses and that phone calls had been made to all identified numbers with no results. The Agency requested a 180-day continuance of the section 366.26 hearing to address placement of the minor and to complete publication to the father. The juvenile court ordered publication and continued the section 366.26 hearing until November 6, 2019, but also set a contested hearing on the issue of the minor's adoptability on June 20, 2019. On June 20, 2019, the juvenile court ordered a permanent plan of adoption and continued the section 366.26 hearing for 180 days. Notice by publication of the November 6, 2019 hearing date was completed in the Oakland Tribune on August 23, 2019.

The November 6, 2019 section 366.26 report recommended that the juvenile court order a permanent plan of adoption for the minor without termination of parental rights.

4

On December 4, 2019, the juvenile court ordered a plan of adoption for the minor S.M. and continued the case for 180 days to locate an adoptive home. A post permanency plan review took place on June 3, 2020. Notice of that hearing was sent by mail to father at 24100 Amador St., Hayward, California.

At the December 2, 2020 permanency review hearing, the Agency asked the juvenile court to set another permanency planning review in six months as the Agency continued to work to identify an adoptive home for S.M. The December 2, 2020 report listed a new address for father: 396 Grove Way, Hayward, California. The report stated that on August 31, 2020, father contacted the Agency and said he had learned from a relative of mother that S.M. was in foster care. Father said he had joint custody of S.M. when the child was an infant but mother did not honor the custody arrangement and disappeared with the minor. Father also claimed mother had contacted him during the past year to arrange a visit but never brought the minor.

On September 15, 2020, S.M. was interviewed and reported that he had met father but does not know him. Father said his original custody orders were signed in 2013 or 2014 and he saw S.M. when the orders issued; he also had a few Facetime contacts. He denied an earlier report that he had hit S.M. with a belt as he has "never even been around" S.M. Although he was given joint custody of S.M., he "couldn't keep going out to Woodland" to see S.M.

Mother reported that father had been very abusive towards her and was very dangerous when angry. She also reported that she was a victim of human trafficking at his hands and that she obtained a restraining order against him when S.M. was a baby. Father had two other children who had been removed from his care. His parental rights were terminated in 2015 as to Z.M. Another child of father's, Sh. M., was placed in foster care; father declined to participate in her case. The social worker obtained an updated criminal history report for father dating back to 1998 with charges including

October 2018, October 2019, and July 2020. In June 2018, father was reportedly arrested for hitting a man with a metal pipe at a Bay Area Rapid Transit station in San Leandro.

On December 2, 2020, father appeared at the permanency review hearing and was appointed counsel. The juvenile court set a hearing regarding notice to father. Father's counsel requested services and argued that "notice in this case was not entirely proper" and "the agency did not complete due diligence and a reasonable search for the father at the time."

On January 13, 2021, the juvenile court held the hearing on notice and found that the Agency made reasonable due diligence efforts to locate father. Father's counsel indicated he had papers regarding a child support letter from September 2017 and that father was on probation. Father's counsel noted the child support records showed a San Leandro address for father, but there is no indication the Agency was ever provided with that address when child support was contacted. County counsel replied that the child support document was from before the dependency case began, and the record shows that the social worker contacted child support on November 30, 2017. Father's counsel acknowledged there was no showing father was physically present at the San Leandro address, although father stated he used it as a mailing address and had been served there in person by child support. Neither document was submitted to the juvenile court and neither is part of the appellate record, although the juvenile court did accept an offer of proof that there was an address in San Leandro some months before the petition was filed.

The juvenile court noted the Agency's efforts had to be reasonable, not perfect, and need not be successful. The juvenile court found that the Agency made many attempts to locate father. Relying on *In re Justice P.* (2004) 123 Cal.App.4th 181 (*Justice P.*), the juvenile court said that when a child has not seen the father in a number of years and where reasonable efforts have been made to locate a parent, the dependency process can proceed. The juvenile court observed that if a parent later surfaces, it does

6

not automatically follow that the best interests of the child would be promoted by re-litigating the case. The juvenile court found that the Agency's efforts to locate and give notice to father were reasonable and it was not in the minor's best interests to return the case back to the jurisdictional phase.

Father filed a timely notice of appeal.

DISCUSSION

Father argues the Agency failed to exercise reasonable due diligence in attempting to locate him and notify him of the dependency case. Specifically, he asserts that "for the entirety of the dependency proceedings, [father] was on probation, and the Agency never contacted any probation agencies."

"Parents are entitled to due process notice of juvenile court proceedings affecting the care and custody of their children, and the absence of due process notice to a parent is a 'fatal defect' in the juvenile court's jurisdiction." (*In re Claudia S.* (2005) 131 Cal.App.4th 236, 247.) "If the whereabouts of a parent are unknown, the issue becomes whether due diligence was used to locate the parent. [Citation]. The term 'reasonable or due diligence' ' "denotes a thorough, systematic investigation and inquiry conducted in good faith." ' " (*Ibid.*) Nevertheless, due diligence requires "a reasonable search effort" -- not a Herculean one. (*Ibid.*) A search effort is reasonable if it is the type of effort that a person "desirous of actually informing the [parent], might reasonably adopt to accomplish it. (*Ibid.*) A search effort is not reasonable if it " 'ignores the most likely means of finding the [parent].' " (*In re Arlyne A.* (2000) 85 Cal.App.4th 591, 598.) We review the juvenile court's factual finding that the Agency acted with due diligence for substantial evidence. (*In re S.K.* (2018) 22 Cal.App.5th 29, 37.)

Substantial evidence supports the juvenile court's finding that the Agency acted with due diligence in trying to locate and notify father about the pending dependency proceeding. As discussed above, the Agency made extensive efforts to locate father, serving notice at several possible addresses and searching a variety of databases for any

available information about him. Although the Agency's efforts to locate father were unsuccessful, we agree that the efforts were reasonable and satisfy due process.

Father faults the Agency for failing to contact the probation department when there was information he might have been on probation. It is not apparent from the record, however, that contacting probation would have revealed any information about father's whereabouts. Father failed to make a showing in the juvenile court that the Agency would have been able to locate his Grove Way address in Hayward, California, by any reasonably available legal means.

Additionally, it is not clear from the record that the child support records would have shown the San Leandro, California address for father during the time of the dependency case. Father claimed in the juvenile court that the address was ascertainable. The record contains an offer of proof that he had an address in San Leandro known to child support months *before* the petition was filed, but father did not provide the juvenile court with evidence that the San Leandro address was reasonably ascertainable at the time the social worker contacted child support or that father could have been found at that address *after* the dependency began. Nor was there any evidence that father had updated his address with child support in the interim. The November 2017 initial non-detaining report and the December 2017 jurisdiction report stated that on November 30, 2017, the social worker contacted the Yolo County Superior Court and the Yolo County Child Support Services as part of its efforts to locate father. The San Leandro address was not obtained from either source during those contacts.

Father has not established that his address was reasonably ascertainable. (*In re Emily R.* (2000) 80 Cal.App.4th 1344, 1352.) On this record it was appropriate for the juvenile court to conclude that the Agency's attempts to locate father were reasonable.

The juvenile court also properly found that it was not in the minor's best interests to return the case to the jurisdictional phase. Father has failed to establish otherwise. (*Justice P., supra*, 123 Cal.App.4th at p. 188.) There is no automatic return to

8

jurisdiction based on a lack of notice, especially here where father would not qualify as a presumed father and would not be entitled to services. (*Id.* at p. 191.) When reunification is no longer an issue, the focus is on the child's interest in a permanent and stable placement. (See *In re Marilyn H.* (1993) 5 Cal.4th 295, 309).) In essence, father sought to begin the dependency proceedings over again, even though it was highly unlikely he could obtain custody of S.M. He had very little contact with S.M. after his birth, failing to communicate with him or support him. He had no parental bond with S.M. He had a lengthy violent criminal history, including allegations of abuse against S.M. and his mother, human trafficking of the mother, and had two other children removed from his care and his parental rights terminated as to one of them. Under these circumstances, substantial evidence supports the juvenile court's finding that it was not in S.M.'s best interests to return to the jurisdictional phase of the dependency proceedings.

DISPOSITION

The orders of the juvenile court are affirmed.


_____/S/_____
MAURO, J.


We concur:


_____/S/_____
ROBIE, Acting P. J.


_____/S/_____
DUARTE, J.


9