Filed 7/16/21  Edgar R. v. Superior Court CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| EDGAR R.,<br><br>　　　　Petitioner,<br><br>　　　　　　v.<br><br>THE SUPERIOR COURT OF FRESNO COUNTY,<br><br>　　　　Respondent;<br><br>FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>　　　　Real Party in Interest. | F082629<br><br>(Super. Ct. No. 14CEJ300319-2)<br><br><br>**OPINION** |

-ooOoo-

### THE COURT

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Gary L. Green, Commissioner.

Katherine Fogarty for Petitioner.

No appearance for Respondent.

Daniel D. Cederborg, County Counsel, and Lisa R. Flores, Deputy County Counsel, for Real Party in Interest.

-ooOoo-


### SEE CONCURRING OPINION

Petitioner Edgar R. is the alleged father of now seven-month-old Fabian who was removed from the custody of his mother T.J. (mother) as a newborn. At a dispositional hearing in April 2021, the juvenile court denied mother and Edgar reunification services and set a Welfare and Institutions Code section 366.26 hearing[1] for August 4, 2021. Edgar contends he was not provided timely notice of the combined jurisdictional and dispositional hearing and therefore denied due process. He further contends the juvenile court erred in not finding he is Fabian's presumed father or alternatively in not giving him more time to elevate his paternity status to presumed father by continuing the dispositional hearing. We deny the petition.

## PROCEDURAL AND FACTUAL SUMMARY

Newborn Fabian was taken into protective custody in December 2020 by the Fresno County Department of Social Services (department) after mother tested positive for methamphetamine at the time of Fabian's birth. She reported using methamphetamine daily during her pregnancy. She had two other children who were not in her care. Fabian was placed in foster care.

Mother identified Edgar as Fabian's father. He did not sign the birth certificate or a declaration of paternity. He did not know she went into labor and had already left the hospital. Mother said Edgar lived with her, but she did not have any contact information for him. She also said he used drugs.

The maternal grandmother confirmed mother lived with her for two months, but Edgar was not allowed in her home. The paternal grandmother said Edgar had been homeless for about eight years. She had not heard from him in a few weeks. She usually found him at a particular store. He was homeless because of his drug addiction but refused help. She said she would have him contact the department if she found him.

---

[1] Statutory references are to the Welfare and Institutions Code unless otherwise indicated.

The department filed a dependency petition alleging Fabian was subject to the juvenile court's jurisdiction. (§ 300, subds. (b)(1) & (j).) Edgar was identified as Fabian's alleged father and his whereabouts were unknown.

Mother appeared at the detention hearing on December 4, 2020. The juvenile court inquired whether anyone other than Edgar could be Fabian's father. Mother said, "No." The court ordered the department to arrange reasonable supervised visitation for mother and to offer her random drug testing. The court set a jurisdictional/dispositional hearing for January 11, 2021.

On December 22, 2020, the department filed a declaration asserting it was unable to locate Edgar following a diligent search effort.

On January 11, 2021, the juvenile court found the allegations true and set the matter for a dispositional hearing on March 15, 2021. The court found that a diligent search had been made to locate Edgar but his whereabouts were unknown.

On February 10, 2021, Edgar filed a "Statement Regarding Parentage" (JV-505), indicating he believed he was Fabian's father and requested a judgment of parentage. He told his parents Fabian was his child and he supplied diapers, bottles and formula. He could not be in the room when Fabian was born because of the restrictions imposed by the COVID-19 pandemic.

On March 15, 2021, the juvenile court informed the parties Edgar was located in the Fresno County jail. The court continued the dispositional hearing as to Edgar until March 17, 2021. The court conducted a contested dispositional hearing as to mother and denied her reunification services because of her untreated drug use. (§ 361.5, subd. (b)(10).) On March 17, the court appointed counsel for Edgar and continued the hearing to April 7.

Edgar appeared for the first time in the proceedings on April 7, 2021, in custody. The juvenile court ordered paternity testing. Edgar's attorney told the court Edgar consented to paternity testing but was not disputing his paternity. Edgar and mother were

3.

together for her pregnancy and he held Fabian out as his own.  On the day she delivered Fabian, they had an argument and he was not present for Fabian's birth.  Had he been present, he would have signed the birth certificate.  He intended to sign a declaration of parentage and wanted that opportunity before proceeding.  He asked to be elevated to presumed father and for a continuance.  He was scheduled to be sentenced that day and expected to be incarcerated until June 30, 2021.

The juvenile court further questioned Edgar to gauge his commitment to Fabian. In response to the court's questions, Edgar said he did not pay for any birth-related expenses.  He did not take any action to get custody of Fabian but said, "I will try to take custody of Fabian."  He told his parents Fabian was his child.  All his friends and family knew Fabian was his son.

The juvenile court denied Edgar's request for a continuance, stating, "I believe that all of the facts and evidence that could be gained are already before the [c]ourt.… [¶]  [T]he [c]ourt has done what I believe is a review of the available evidence and an offer of proof that just doesn't find anything would be gained.  In fact, I don't believe that a delay would … be in the best interest of the minor.  And the mother has already been bypassed.  So I do believe we need to go forward on disposition."  The court denied Edgar's JV-505 and denied him reunification services.

**DISCUSSION**

*Edgar Was Not Denied Due Process*

"Parents are entitled to due process notice of juvenile court proceedings affecting the care and custody of their children, and the absence of due process notice to a parent is a 'fatal defect' in the juvenile court's jurisdiction." (*In re Claudia S*. (2005) 131 Cal.App.4th 236, 247.)  However, the rights due a man claiming to be the father of a child differ depending on his paternity status.  The status Edgar hoped to attain is that of presumed father.  A presumed father is a man who meets one or more specified criteria in Family Code section 7611 and is entitled to appointed counsel, custody (if there is no

4.

finding of detriment) and reunification services. Family Code section 7611 sets forth several rebuttable presumptions under which a man may qualify as a presumed father. Generally, the presumptions apply in situations where the child was born during, before or after a marriage or attempted marriage or the presumed father received the child into his home and openly held the child out as his natural child.

A biological father is a man whose genetic paternity has been established, but has not shown he is the child's presumed father. (*In re P.A.* (2011) 198 Cal.App.4th 974, 979.) A biological father is not entitled to custody or reunification services. (*In re Zacharia D.* (1993) 6 Cal.4th 435, 451.) However, the juvenile court may provide him services if it benefits the child. (§ 361.5, subd. (a).) An alleged father, like Edgar, is a man who has not established biological paternity or presumed father status. (*In re P.A.*, at p. 979.) Until the alleged father establishes his paternity, he has no legal interest in the child (*In re O.S.* (2002) 102 Cal.App.4th 1402, 1406) and is not entitled to reunification services. (§ 361.5, subd. (a).) Due process requires only that he be given notice and an opportunity to appear, assert a position and attempt to change his paternity status. (*In re Paul H.* (2003) 111 Cal.App.4th 753, 760.)

The juvenile court has a duty to determine the parentage of a child. (*In re Jesusa V.* (2004) 32 Cal.4th 588, 665.) To that end, section 316.2, subdivision (a) requires the court to inquire of the mother and any other appropriate person at the detention hearing, or as soon as practicable thereafter, as to the identity of all possible presumed or alleged fathers. If, after inquiring, the court identifies one or more alleged fathers, each alleged father must be provided notice at his last and usual place of abode by certified mail, return receipt requested alleging that he is or could be the father of the child. "The notice shall state that the child is the subject of proceedings under Section 300 and that the proceedings could result in the termination of parental rights and adoption of the child." (*Id.* at subd. (b).)

5.

Here, Edgar's biological paternity was undisputed. Mother identified him as Fabian's father and the juvenile court verified at the detention hearing that no one other than Edgar could be Fabian's father. Edgar was considered Fabian's alleged father because he did not qualify as a presumed father under the Family Code and had not taken a paternity test to establish his biological paternity. The problem, however, was that his whereabouts were unknown.

"If the whereabouts of a parent are unknown, the issue becomes whether due diligence was used to locate the parent." (*In re Claudia S.*, *supra*, 131 Cal.App.4th at p. 247.) "The term 'reasonable or due diligence' ' "denotes a thorough, systematic investigation and inquiry conducted in good faith." ' " (*Ibid.*) Nevertheless, due diligence requires "a reasonable search effort"—not a Herculean one. (*Ibid.*) A search effort is reasonable if it is the type of effort that a person "desirous of actually informing the [parent], might reasonably adopt to accomplish it. (*Ibid.*) A search effort is not reasonable if it " 'ignores the most likely means of finding the [parent].' " (*In re Arlyne A.* (2000) 85 Cal.App.4th 591, 598–599.) A trial court's factual finding that the department acted with due diligence in attempting to locate a parent is reviewed for substantial evidence. (*In re S.K.* (2018) 22 Cal.App.5th 29, 37.)

Once Edgar was identified as a possible father, the department attempted to locate him through the maternal grandmother, who said he did not live in her home, and through the paternal grandmother, who said he was homeless. She was aware of a particular location that he frequented and told the social worker she would tell Edgar to notify the department if she had contact with him. On December 7, 2020, the department consulted multiple databases, including the prison locator and county jail, in an attempt to locate Edgar without success. The department found a match, however, through the sheriff's department and sent Edgar letters to the addresses listed, stating the department was looking for the father of a male child born on Fabian's birth date and asking Edgar to

6.

contact the department. The department also sent a letter to the Mexican Consulate in Fresno seeking assistance with locating Edgar's relatives.

Edgar contends the department's search efforts were not reasonable because there were several ways it could have located him prior to the jurisdictional hearing in January 2021. It could have, for example, searched the area he frequented, followed up with the paternal and maternal grandmothers to see if they heard from him or checked the inmate locator a week before the hearing since he was in county jail in December 2020. Had the department conducted an adequate search effort, Edgar contends, he would have been located sooner and able to elevate his paternity status before the juvenile court set a section 366.26 hearing.

Substantial evidence supports the juvenile court's finding the department acted with due diligence to locate Edgar. It inquired of those closest to him and determined he was homeless. It also conducted a thorough search of known databases, found the various addresses associated with him and notified him in writing that they were searching for the father of a male child born on a date that Edgar would recognize as Fabian's birth date. After conducting a diligent search, the department was not required to keep checking and rechecking with people and databases in hopes of a different result.

Further, even if the department's search effort was inadequate to provide notice, Edgar cannot show he was prejudiced by any delay in receiving notice of the proceedings. (*In re Kobe A.* (2007) 146 Cal.App.4th 1113, 1122–1123.) At best, as we discuss in the next section, Edgar was a biological father and there is no evidence on the record that providing him reunification services would benefit Fabian.

*The Juvenile Court Did Not Err in Finding Edgar Is Not a Presumed Father and in Not Continuing the Dispositional Hearing*

Edgar contends the juvenile court abused its discretion in not continuing the dispositional hearing to determine whether he was Fabian's biological or presumed father. There were potential witnesses, he claims, whose testimony could support a

7.

finding he was a presumed father even though he did not receive Fabian into his home. Additionally, he points out, California Rules of Court, rule 5.635[2] requires the juvenile court to determine if he is Fabian's biological father.

"[P]roviding children expeditious resolutions is a core concern of the entire dependency scheme." (*Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 847, fn. 4.) Consequently, "[o]ur state's dependency statutory scheme imposes strict requirements to resolve cases expeditiously." (*In re James Q.* (2000) 81 Cal.App.4th 255, 267.) For that reason, continuances in juvenile dependency cases are generally disfavored. (*In re David H.* (2008) 165 Cal.App.4th 1626, 1635.)

Section 352, the governing statute, allows the juvenile court to grant a continuance upon a showing of good cause and only for that time shown to be necessary. (§ 352, subd. (a)(2).) "[A] continuance shall not be granted that is contrary to the interest of the minor. In considering the minor's interests, the court shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements. (*Id.* at subd. (a)(1).) "A reviewing court will reverse an order denying a continuance only upon a showing of an abuse of discretion." (*In re Gerald J.* (1991) 1 Cal.App.4th 1180, 1187.)

Contrary to Edgar's assertion, there is no evidence he was a presumed father under Family Code section 7611. He was not married to mother and there is no evidence he attempted to marry her. Further, although he held Fabian out as his child, he did not receive him into his home. Nor is Edgar a presumed father under *Adoption of Kelsey S.* (1992) 1 Cal.4th 816 because he expressed a desire to have custody of Fabian. Under *Kelsey S.*, an unwed biological father who does not satisfy any of the presumptions under Family Code section 7611 may assert constitutional paternity rights by showing he

---

[2]     Rule references are to the California Rules of Court.

promptly stepped forward to assume full parental responsibility for the child's well-being, including a financial, emotional or other commitment. (*Adoption of Kelsey S.*, at p. 849.) By his own admission, Edgar made no attempt to financially assist mother with birth-related expenses or to legally assume custody of Fabian by signing the birth certificate or a voluntary declaration. Consequently, he does not qualify as a *Kelsey S.* father.

Further, although rule 5.635 does require the juvenile court to determine a man's biological paternity, there is no evidence establishing Edgar's biological paternity would have made a difference. Rule 5.635(e) provides that if the court determines through statements of the parties or other evidence that a determination of parentage has not been made, the court must take appropriate steps to make the determination. An alleged father and his counsel must complete and submit a JV-505. The court may order the child and alleged parent to submit to genetic tests. The court may make its determination of parentage based on the testimony, declarations, or statements of the alleged parents. (Rule 5.635(e)(1)–(3).)

Edgar filed a JV-505, which the court reviewed, and determined Edgar was not a presumed father. Further, the court had sufficient evidence on which to find Edgar is Fabian's biological father. Mother told the court there could be no other father and Edgar said there was no need for paternity testing to verify it. Further, the court could find that providing Edgar reunification services would not benefit Fabian. Edgar had a long history of homelessness and some history of drug addiction according to his mother and of recent drug use according to mother. Consequently, there was no need for the juvenile court to continue the hearing to develop information that it already had and to decide whether to order reunification services. The court's order denying a continuance therefore was not an abuse of discretion.

9.

**DISPOSITION**

The petition for extraordinary writ is denied.  This opinion is final forthwith as to this court pursuant to rule 8.490(b)(2)(A).

SMITH, J.

I CONCUR:

DETJEN, Acting P.J.

10.

FRANSON, J., Concurring

I concur with the ultimate conclusion by the majority that any errors by the juvenile court relating to lack of notice, or failure to set a contested hearing on parentage, were harmless. However, I disagree with the majority that the juvenile court did not abuse its discretion when it denied father's request for a reasonable continuance to hold a contested hearing so he could present evidence to support his claim that he was the presumed father of Fabian.

The juvenile court balanced the minor's interest in a prompt resolution of the case against father's interest in obtaining a short continuance so he could present evidence that he should be deemed a presumed father. The undisputed facts show that father was visited by a Department of Social Services representative in the Fresno County jail on January 22, 2021, where he was being held without bail. He executed his "Statement Regarding Parentage" form (JV-505), which was filed by the social worker with the court on February 10, 2021. Despite knowing where father was located on January 22, father was not brought before the juvenile court until nearly two and one-half months later, on April 7, 2021. Nothing in the record reflects any ex parte requests by the department to promptly bring father before the court for a more timely hearing.

Father's JV-505 responses provided witnesses that he had held Fabian out as his child, which was expanded to include others at the April 7, 2021 hearing. The JV-505 responses stated he had given newborn diapers, bottles and formula to the child. Father's counsel, who had spoken with father for the first time on the day of the hearing, stated father wished to provide evidence to expand on his JV-505 responses and make an offer of proof. This included that father and mother were together the entire pregnancy; he held himself out as father that entire time; when he found out mother was in labor at the hospital he was unable to be present, presumably because of COVID-19 restrictions; he intended to sign the declaration of parentage and the birth certificate; and father was

likely to be released from jail on June 30, 2021. Counsel stated that evidence from father's family, mother and others would be offered to show how father had held Fabian out as his own child.

The juvenile court stated it did not know what would be gained by having a contested hearing or what more could be learned. The court balanced father's rights for a contested hearing on parentage against Fabian's interest in a prompt decision. It concluded Fabian's interest should prevail. Put this conclusion into perspective: Fabian was taken into protective custody three days after his birth in late November 2020, where he remained up through father's disposition hearing on April 7, 2021, when he was four months old. He resided in a protective environment and situation, which was unlikely to change anytime soon.

Given the totality of the circumstances of this case, especially considering obvious COVID-19 restrictions (as they relate to access to hospitals, jails, and the courts), homelessness, addiction, and lack of bail, any delay beyond January 22, when he was located by the department, was out of father's control. The department had the ability to request that he be brought to court well before April 7, but did nothing. As such, I question why the juvenile court did not allow the undisputed biological father a short continuance for a hearing to present evidence to show he was entitled to presumed father status.

Notwithstanding Fabian's interest in having a prompt resolution of his custody status, which was minimal given his age, father was entitled to an opportunity for a contested hearing to present evidence of his presumed status as father to Fabian. The juvenile court abused its discretion when it denied that request.


FRANSON, J.


2